# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| Nichole Y. Sartor | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | No. 06-4044 |
| | § | |
| Union Pacific Corporation, | § | |
| Union Pacific Railroad Company, | § | |
| **Defendants.** | § | |

PLAINTIFF MEMORANDUM IN SUPPORT OF ITS MOTION IN RESPONSE
TO UNION PACIFIC RAILROAD COMPANY'S AND UNION PACIFIC
CORPORATION'S MOTIONS TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)[1]

COMES NOW Plaintiff, Nichole Sartor, and submits this, its Memorandum in

Opposition to Union Pacific Railroad Company's Motion to Dismiss Pursuant to Fed. R.

Civ. P. 12(b)(6).  As more fully set forth below, Defendant has wholly failed to meet its

burden of overcoming the presumption against preemption, and Defendant's Motion to

Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion") should be denied in its entirety.

In support thereof, Plaintiff would respectfully show the Court as follows:

---

[1] Union Pacific Railroad Company has filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).
Union Pacific Corporation has filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and also a
Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) subject to its Motion to Dismiss Pursuant to Fed. R.
Civ. P. 12(b)(2).  Union Pacific Corporation and Union Pacific Railroad filed essentially the same Motion
and Memorandum in support of its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff's
Memorandum serves as its response to both Union Pacific Corporation and Union Pacific Railroad
Company's respective motions.

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 1 of 40

## I.     BACKGROUND

One of America's leading transportation companies, Union Pacific Corporation ("UPC"), and its wholly owned subsidiary, Union Pacific Railroad Company ("UPRR"), are defendants in an action brought in this Court by Nichole Sartor ("Sartor").  Sartor filed this action because UPC and UPRR's negligence caused a massive explosion on October 15, 2006, in Texarkana, Arkansas that completely obliterated a house Sartor owned and also severely damaged or destroyed Sartor's personal property.  Specifically, during the morning hours on October 15, 2005, a Union Pacific train collided with another Union Pacific train resulting in the derailment of multiple railcars.  These two trains were believed to be transporting, among other things, highly flammable and dangerous chemicals such as propylene.  The collision and derailment resulted in the rupture of at least one railcar causing the release of propylene and possibly other dangerous chemical into the surrounding area.  The released chemicals ignited causing multiple explosions and resulted in the death of one individual and the complete destruction of multiple homes and personal property, including Sartor's house and personal property located at 105 Jackson Street.

In response to the lawsuit filed by Plaintiff, on August 4, 2006 Defendant Union Pacific Railroad Company moved for dismissal based on Federal Rule of Civil Procedure 12(b)(6) claiming that Plaintiff has failed to state a claim on which relief can be granted. To date, no discovery has been conducted in this litigation, and a Rule 26(f) Conference has not even been scheduled by the Court.

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

## II.    ARGUMENT

In its Motion, Defendant attempts to tackle the heavy burden of overcoming the presumption against preemption under the Federal Railroad Safety Act ("FRSA") – a presumption that is embedded within the FRSA itself – and thereby denying Plaintiff her day in court to seek redress against the Defendant for its involvement and role in the events that led to the total obliteration and destruction of her house and personal property. Defendant makes the sweeping and very broad assertions that all of Plaintiff's claims are preempted and Plaintiff has no private right of action.  Determining the preemptive effect of the FRSA in individual matters involves highly fact specific evaluations, and it is not amenable to a "one size fits all" evaluation that Defendant advocates.   Defendant advocates a position that: (1) railroads are subject to regulation, (2) the whole field is preempted, (3) Defendant is a railroad, and (4) Defendant therefore cannot be sued.  This shallow analysis is not consistent with established principles of law and must fail.  As Plaintiff will demonstrate, there is no field preemption or immunity involved in this matter, and private causes of action for a railroad's negligence have been ongoing throughout the thirty-six year history of the FRSA.[2]

### A.    THE EARLY STAGE OF THIS CASE RENDERS THE MOTION PREMATURE

Federal preemption cases typically arise at the Rule 56 stage of the proceedings or after trial, and not under Rule 12.[3]  By its very nature, a proper preemption analysis is a

---

[2] Defendant has filed essentially the same preemption motion in related cause of action pending in this Court, *Bradford v. Union Pacific Railroad Company*, No. 05-3852.  Plaintiff, in this Response, adopts the same arguments presented by the plaintiffs in that matter.

[3] *Plaintiff is aware of only one case in which a court dismissed for failure to state claim due to FRSA preemption: Mehl v. Canadian Pacific Ry., Ltd.. The Mehl decision arose out of the same derailment as*

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 3 of 40

highly fact specific and detailed analysis, and the "Why?" and "How?" surrounding the circumstances of train accidents are critical to the analysis. In order to determine whether there is "coverage" by federal regulation, it is necessary to determine what is supposedly being "covered". Thus, in *Shanklin v. Norfolk S. Ry Co.,* 369 F.3d 978, 987-88 (6th Cir. 2004). *reh'g en banc denied* (July 29, 2004), a claim regarding vegetation blocking the view of a warning signal in one place was preempted, while another claim concerning vegetation further away from the tracks, but still under the control of the railroad, was not preempted. The distinction in this case was purely factual. Factual development of this case cannot, therefore, be avoided, and Plaintiffs' claims should not be dismissed absent the full ability to conduct discovery.

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must simply include "a short and plain statement of the claim showing that the pleader is entitled to relief." "It is established doctrine that a pleader is not required to set forth specific facts to support its general allegations, . . . and pleadings are to be construed liberally in favor of the pleader[.]" *Seasongood v. K & K Ins. Agency.* 548 F.2d 729, 733 (8th Cir. 1977) (quoting *Great Atlantic & Pacific Tea Company v. Amalgamated Meat Cutters,* 410 F.2d 650, 652- 53 (8th Cir. 1969). Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson, 355* U.S. 41, 47 (1957). Put otherwise, "[a] defendant need only be given fair notice of the nature and basis or grounds of the claim and a general indication

---

the decision in *In re Soo Line R.R. Co. Derailment of January 18, 2003 in Minot, ND,* 2006 WL 1153359, *21 (Minn. Dist. Ct. April 24, 2006) (Leung, J.), an opinion released after *Mehl* which forcefully rejected *Mehl's* reasoning and outcome. Judge Leung's opinion contains a very thorough and comprehensive analysis of FRSA preemption.

---

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 4 of 40

of the type of litigation involved. It is the discovery process which bears the burden of filling in the details." *Hein v. Arkansas State University,* 972 F. Supp. 1175, 1180 (E.D. Ark. 1997) (citation omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema* N. A., 534 U.S. 506, 512 (2002). "'The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.'" *Id.* at 512.13 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, p. 76 (2d ed. 1990)). The Supreme Court has expressly denounced requiring plaintiffs to plead with particularity in contexts other than fraud and mistake. *Id.* at 513.

In *Illinois-California Exp., Inc. Duffy,* 15 F.R.D. 41 (S.D. Iowa 1953), the court held that the defendant's objections to vague allegations were without merit where the plaintiff had alleged "that the proximate cause of the damage sustained by plaintiff was the negligence of the defendant in the operation of his automobile at said time and place." *Id.* at 41-42. The court recognized that Form 9 of the Federal Rules of Civil Procedure permitted such pleading. Notably, illustrative Form 9 exists today, stating: "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway."

Plaintiff in the instant matter has alleged, generally, that Union Pacific negligently caused its trains to collide with one another, release gas, and explode. This type of

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 5 of 40

general notice pleading is all that is required.  Given that no discovery has taken place in the instant case, Plaintiff should be allowed the opportunity to develop its claims, and Plaintiff's feet cannot be held to the fire on the strength of a shred of facts known or believed at the time of the Complaint.

At this time, very little is known to Plaintiff (and others) about what factors proximately caused the collision in question, subsequent derailment, explosions, and incineration of life and property.  Plaintiff and others, at this time, only have a vague understanding of exactly what transpired, and in submitting its complaint, Plaintiff included much of this information, upon information and belief, in her Complaint. Significantly, the National Transportation Safety Board ("NTSB") has not yet released its report, and federal regulations forbid the dissemination of information until that time absent permission from the NTSB. 49 C.F.R. § 831.13.  The truth of the matter is that nobody, including Plaintiff, truly knows at this point what factors proximately caused all the damages - nor do they need to.  The Federal Rules require only that the Plaintiff identify the accident and allege that the Defendant caused it through its negligence.

Without regard to any of the specific surrounding facts or circumstances, Defendant attempts to persuade this court that because of the mere presence of federal regulations, the subject matter of Plaintiff's claims are automatically "covered." This is a wholly improper request due to the fact that, by definition, the "subject matter" of the claims depends entirely upon the proximate cause of the wreck.  Defendant attempts to manipulate the language of Plaintiff's notice-pleading allegations and box in the covered "subject matter" in an apparent attempt to circumvent this truth.  At this stage of the

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 6 of 40

litigation however, when discovery has not even begun and the NTSB has not completed is investigation and report, the worst that should happen is for the Court to strike any allegation of fact that is preempted under *all conceivable circumstances*.   Therefore, Defendant's Motion must be denied.

In the instant case it is indisputable that Defendant ultimately caused this tragedy when it ran one of its trains into the back of another, but, significantly, what has not been determined is "why" Defendant did so.  Discovery has not even begun, and until the reasons for the collision are fully established, there is no way to even consider whether preemption applies in this matter.  In the event, *arguendo,* that the crash was caused by the same type of non-preempted foliage blocking a signal, as in *Shanklin,* the Supreme Court has already decided there is no preemption, and there could not be preemption here.   However, it is simply too soon to make that determination, and Defendant's Motion should be denied for that reason alone.

**B.     THERE IS NO FIELD PREEMPTION UNDER THE FRSA**

Defendant asserts that Plaintiff's claims arising out of Defendant's running of one train into another should be dismissed because her claims are "preempted by the comprehensive federal regulation of railroad operations and the transportation of hazardous materials by rail" and that "the FRSA does not provide for a private right of action" that would allow Plaintiff redress for Defendant's negligence.  DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) at 4 ("Brief").  Defendant's cursory "analysis" does not delve into the detailed factual analysis that is required to overcome the heavy presumption against preemption.

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 7 of 40

### 1.   Overview of Federal Preemption

The doctrine of preemption is part of an overall system that seeks to strike a balance between and unite individual and divisible states and a single united nation made up of those states.  The Supremacy Clause provides that the laws of the United States shall be the "supreme law of the land." U.S. Const. art. VI, cl. 2.  However, the laws of the United States are not the exclusive laws of the United States as a whole and its individual states, but rather state law must give way only where it frustrates or conflicts with federal law.  *Maryland v. Lousiana*, 451 U.S. 725, 746 (1981).  In this matter, the Supremacy Clause need not be invoked.  In this case, the question must be asked of whether a finding that state law imposes liability for the consequences of running two trains into one another would conflict with or frustrate any federal law?  The answer is no.  There is no federal law that would encourage or require such activity, and therefore any state law that discourages such activity is not in conflict with and does not frustrate any such federal law.

Congress enacted the FRSA in 1970, and it was passed to provide for the creation of railroad safety standards that would be "nationally uniform *to the extent practicable*," but not necessarily to provide complete and absolute uniformity to each and every conceivable matter that touches upon railroad safety.  Congress' intent to "promote safety in every area of railroad operations," 49 U.S.C. § 20101, through standards that would be "nationally uniform *to the extent practicable*," 49 U.S.C. § 20106, is a rejection of the idea of field preemption and also a rejection of the interpretation that Defendant advocates in its Motion.

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 8 of 40

When Congress intends to preempt state law, it may do so in one of multiple ways. First, Congress may place an express preemption provision in a statute, such as in the FRSA. However, *also as is the case with the FRSA*, Congress may expressly limit its effect. Second, Congress may not use explicit language to preempt state law, but may create a scheme of regulation that is so pervasive as to make it reasonable to infer that it left no room for states to supplement it.[4] Finally, if there is an irreconcilable conflict with state law, the conflicting federal law preempts the state law.

Clearly the preemption analysis goes beyond the idea that just because there is broad regulation in a particular area there must be total preemption relating to any matter that touches upon that subject matter. To adopt such a position, as Defendant advocates, would eviscerate the Supremacy Clause as it has come to be recognized and would create a single source for all law. Such an interpretation would prevent any state from passing regulation in any general area in which the federal government had exercised any regulatory or statutory authority.

Notably, the Supreme Court has declined to adopt such a view that would entirely vest the federal government with complete regulatory and statutory authority, and instead explicitly stated that there is a strong "presumption *against* preemption." *See CSX*

---

[4] Implied preemption haws been disfavored in recent Supreme Court Cases:

> Today's decision thus comports with this Court's *increasing reluctance to expand* federal statutes beyond their terms through doctrines of implied pre-emption. This reluctance reflects that pre-emption analysis is *not '[a] freewheeling judicial inquiry* into whether a state statute is in tension with federal objectives,' but an inquiry into whether the ordinary meanings of state and federal law conflict.

*Bates v. Dow Agrosciences,* LLC, 544 U.S. 431, 459 (2005) (Thomas, J. concurring) (emphasis added, citations omitted)

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 9 of 40

*Transp. v. Easterwood*, 507 U.S. 658, 668 (1993) (emphasis added). "In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, preemption will not lie unless it is the clear and manifest purpose of Congress." *Id.* at 663-64 (internal quotations omitted). *Easterwood* involved an analysis of the FRSA, and the Court recognized that the FRSA displays "considerable solicitude for state law." *Id.* at 665. The Court further refused to recognize that the FRSA covered the field of railroad law, and stated that the FRSA "regulations provide no affirmative indication of their effect on negligence law." *Id.* at 668.

State law should not automatically or uniformly give way to federal law. The "considerable solicitude for state law," and the general "presumption against preemption" support this position and reinforce that state law should only give way if it frustrates or conflicts with federal law. Defendants ask this Court to disregard these principles and blindly hold that Plaintiff's claims are preempted without regard to whether state law (i.e. "you are liable if you crash your trains into one another") conflicts with or frustrates federal law (i.e. "these are regulations for running a safe railroad").

## 2. Courts Attempt to Avoid Forfeitures and Abhorrent Outcomes and Therefore Apply Federal Preemption Sparingly

A balance must be struck between the requirements of the Supremacy Clause and the need for efficient national standards on one hand, and applying preemption in a manner that conflicts with state authority, common sense, and notions of individual fairness by depriving individuals injured by another's fault of any form of redress. It

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 10 of 40

makes little sense to use a safety statute to immunize Defendant from liability for crashing its trains into one another and precluding recovery by the people that the very regulations seek to protect.   This discord between the necessity for preemption and the goal of individual fairness is resolved by a "presumption against preemption" *Easterwood*, 507 U.S. at 668, and in the sensible application of preemption in an attempt to further established goals of safety and fairness as opposed to undermining them.   The goals of the regulatory scheme, "to promote safety in every area of railroad operations and reduce railroad related accidents and incidents, and to reduce deaths and injuries to persons...," 49 U.S.C. 20101, are complemented, not frustrated, by state laws providing incentives for safety.

> [I]t does not necessarily follow that "[t]he hit-or-miss common law method runs counter to a statutory scheme of planned prioritization." In fact, the scheme of *negligence liability could just as easily complement these regulations* by encouraging railroads – the entities arguably most familiar with crossing conditions – to provide current and complete information to the state agency responsible for determining priorities for improvement projects in accordance with § 924.9. In light of the relatively stringent standard set by the language of § 434 and the presumption against pre-emption, and given that *the regulations provide no affirmative indication of their effect on negligence law,* we are not prepared to find pre-emption solely on the strength of the general mandates of 23 CFR pt. 924.

*Easterwood*, 507 U.S. at 668 (emphasis added) (citation omitted).   Courts should be reluctant to find preemption, and the historic powers of the states to regulate train safety must not be "superseded … unless that [is] the clear manifest purpose of Congress."  *See Rice* v. *Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947).  Holding the Defendant liable

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 11 of 40

in this case for its unsafe conduct supports "the clear and manifest purpose of Congress" to ensure safety.

**3.    The FRSA Itself Seeks to Maintain a Balance Between Federal and State Law**

The FRSA itself is replete with limitations and conditions on preemption, and does not provide for absolute and total federal preemption.  Additionally, the FRSA only seeks to establish uniform standards "to the extent practicable."  While the FRSA admittedly has a preemption provision, this preemption provision is both prefaced and succeeded by savings clauses, contains qualifications, and remains silent with regard to state negligence laws.  The FRSA's preemption provision is expressly conditioned on administrative action and subject to an express exception:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be ***nationally uniform*** to the extent practicable. *A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until* the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. *A state may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety* when necessary to eliminate or reduce an essentially local safety or security hazard, and when not incompatible with a law, rule, regulation, order, or standard, when not creating an undue burden on interstate commerce.

49 U.S.C. § 20106.  "Considerable solicitude for state law" is clearly displayed in this language by prefacing and succeeding the preemption clause with express savings clauses. *Easterwood*, 507 U.S. at 665.  As a result of these savings clauses, states are

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 12 of 40

expressly permitted to apply their own laws if the Secretary of Transportation or the Secretary of Homeland Security has not "prescribe[d] a regulation or issue[d] an order covering the subject matter." 49 U.S.C. § 20106. Also, notwithstanding that the subject matter is covered, states are expressly allowed to apply their own laws, even laws that are in addition to or more stringent, if the three conditions of the savings clause are met. With the presumption against preemption in mind, it is clear that federal law, the preemption doctrine, and the Supremacy Clause will not seek out a conflict, but rather state and federal laws will be harmonized when possible.

C.   **FRSA PREEMPTION APPLIES ONLY IN LIMITED CIRCUMSTANCES: SPECIFICALLY TO COMMON LAW CLAIMS WHERE (1) THERE IS A RELEVANT REGULATION (2) THAT SUBSTANTIALLY SUBSUMES THE SUBJECT MATTER OF PROXIMATE CAUSE AND (3) THE RAILROAD HAS MET THE PRECONDITIONS OF ALL SUCH REGULATIONS**

*Easterwood* and the series of *Shanklin* cases are the controlling cases in the FRSA preemption opus. The Supreme Court's first consideration of preemption under the FRSA occurred in *Easterwood* and the *Shanklin* cases followed. The *Shanklin* cases, when taken together, reconfirm the principles set forth in *Easterwood* and serve to reinforce the proposition that FRSA preemption must be found with reticence, claim by claim, C.F.R. by C.F.R. Therefore, these cases confirm that preemption analysis are highly factual analyses that must compare the facts surrounding any situation with specific regulations, effectively eliminating Rule 12 as a means of deciding preemption questions. The Court in both *Easterwood* and the *Shanklin* cases recognized that different facts create different outcomes, there is no field preemption under the FRSA,

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 13 of 40

and determined that some claims were preempted in each case, but under the specific facts of each case, other claims survived to provide the injured party a day in court.

1.    ***Easterwood* Requires That, in Order for FRSA Preemption to Apply to Common Law Claims, the Regulations Must Do More than "Touch Upon" the Subject Matter of Proximate Cause, and the Preconditions of Those Regulations Must Be Met.**

*Easterwood* was a crossing accident case involving claims for failing to maintain adequate warning devices and for operating the train at excessive speed.  The Court rejected the preemption of common law duty to have an adequate warning device at highway crossings.  The Court found that the regulations adopted by the Secretary under the FRSA did not preempt requirements imposed by state negligence law regarding the railroad's duty to maintain warning devices at railroad crossings.  *Id.* at 673.  The Court began its analysis with reference to the express saving clause in the preemption provision in 45 U.S.C. § 434, (now codified at 49 U.S.C. § 20106, presented *supra)* and emphasized the deference to be given to the savings provision imbedded within the preemption provision.  *Id.* at 662, 665.  The Court then began to examine the specific regulations the railroad claimed preempted plaintiff's crossing warning device claims.  The Court reviewed 23 C.F.R. §646.214(b)(3) and (4), which the railroad claimed preempted plaintiff's crossing warning device claims. The Court rejected this argument and found that while there was coverage under these two regulations, *id.* at 670-671, there were also *preconditions* for the *application* of the regulations, such as *installation* and *funding,* and that those preconditions had not been met, *id.* at 671-72 (emphasis added). This is because those subsections require not only that either automatic gates be installed ((b)(3)) or the Federal Highway Administration ("FHWA") approve non-automated warning devices ((b)(4)), but that *federal funds participate* and that

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 14 of 40

*installation* of the warning devices *actually occurs.* As a result, the Court never reached the question whether the criteria for automatic gates were present under 23 C.F.R. § 646.214(b)(3) and (4) because the crossing upgrade project in that case had been shelved and the federal funds went elsewhere. *Id.* at 671-72. Neither installation nor the participation of federal funds occurred in accordance with the express terms of the regulation, and preemption could not take hold.

This holding decides this motion. First, this holding of the Supreme Court eviscerates Defendant's principal argument that all claims arising from the operation of a federally regulated railroad is preempted. If the position Defendant now takes was the law, then the *Easterwood* warning gate claim would have been preempted because it involved the operations of a regulated railroad. If there were absolute immunity, as Defendant advocates, the Supreme Court could not have declined to preempt the crossing gate claim. *Easterwood*, therefore, renders Defendant's absolute immunity/no cause of action argument, which is the basis of the Rule 12 Motion, unsustainable.

In addition to there being a regulation "covering" the warning device, the Court also required that the preconditions of funding and installation of the devices consistent with the regulations be met before preemption would apply. Therefore, further layers of detailed factual inquiry must be made into actual compliance and application of the regulation by all relevant parties at the particular accident site before preemption applies. This is well beyond the cursory analysis of "we are a railroad and there is a regulatory scheme" that Defendant proposes.

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 15 of 40

This level of detail is further supported by *Easterwood's* analysis if the preempted speed claim.  The Court concluded that train speed was covered by regulation and that, since the train in *Easterwood* was traveling within the speed limit, the claim was precluded because the train's speed was both covered by the regulation and compliant with it. The Court determined that, under the FRSA, only common law claims that seek to impose standards *"additional" to and "incompatible with"* federal requirements will be preempted. 507 U.S. at 674-75.  The Court held that "the speed limits must be read as not only establishing a ceiling, but also precluding *additional* state regulation of the sort that respondent seeks to impose on petitioner."  507 U.S. at 674.  Of course, the "sort" of regulation the respondent sought to impose was a common law duty that would require a more stringent speed limit than the federal regulation permitted.  *Id.* at 673.  The Court next found that the petitioner's train was traveling between 10 and 28 miles per hour slower than the maximum speed permitted by the regulation for that particular class of track.  *Id.*  The Court determined that permitting the enforcement of stricter duties in the face of such compliance would render the common law "'incompatible with' FRSA and the Secretary's regulations."  *Id.* at 675 (emphasis added).  Thus, the Court held in the context of the train speed claim that common law duties will be preempted where they seek to impose standards "additional to" and "incompatible with" federal railroad statutes or regulations.  This is the same thing as requiring that the preconditions of each relevant regulation be met.   If the common law duty sought to be imposed parallels the

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 16 of 40

requirements of the regulation, it is neither a stricter, "additional" requirement nor an incompatible standard.[5]

Notably, case law since the *Easterwood* decision is abounding with instances where plaintiffs were allowed to proceed to trial on whether defendants violated the regulations.  *See Michael v. Norfolk S. Ry. Co.,* 74 F.3d 271, 273 (11th Cir.1996) (recognizing common-law claim for violation of the FRSA regulations specifying design standards for crossing arm);  *Kiemele v. Soo Line R.R. Co.,* 93 F.3d 472, 476 (8th Cir. 1996) (no preemption under FRSA where warning devices are not operational);  *cf. Sheppard* v. *Union Par.* R. *Co.,* 357 F. Supp. 2d 1180, 1187 (E.D. Mo. 2005) (recognizing common-law claim under the FRSA);  *Anderson Wisconsin Cent. Transp. Co.,* 327 F. Supp. 2d 969, 977, 980, 984 (E.D. Wis. 2004) (fact issues regarding speed, sounding warning, vegetation and driver negligence precluded summary judgment based on FRSA preemption);  *Nippon Yusen Kaisha v. Burlington and N. Santa Fe Ry Co.,* 367 F. Supp. 2d 1292, 1303 (C.D. Cal. 2005) (state claim not preempted); *Stone CSX Transp. Inc.,* 37 F. Supp. 2d 789, 795-98 (S.D. W. Va. 1999) (recognizing state tort claim under FRSA); *Zook v Norfolk* & W. *Ry.* Co., 642 N.E.2d 1348 (111. App. Ct. 1994) (recognizing common-law claim based on railroad's violation of FRSA speed limit); *Stanton v. National R.R. Passenger Corp.,* 849 F. Supp. 1524, 1528 (M.D. Ala. 1994) (same).

---

[5] Plaintiff makes this point not to argue that she believes defendant exceeded the federally established speed limit, but rather to rejoin Defendant's general argument that compliance with federal regulations is not required under the precedent.  It clearly is.

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

    **2.**    *Shanklin* **Demonstrates What Happens When All the Preconditions for the Application of the Regulations Have Been Met: Preemption Applies Only to Proximate Causation Evidence That the Regulations Substantially Subsume.**

Union Pacific also mischaracterizes the Supreme Court's analysis and the plaintiff's claim in *Norfolk S. Ry. Co. v. Shanklin,* 529 U.S. 344 (2000). Specifically, Union Pacific asserts, or at least implies, that the Court held that a common law cause of action premised upon the railroad's noncompliance with Federal Railroad Administration ("FRA") regulations is always preempted. In *Slanklin,* the widow of a man who died in a railroad crossing accident sued for damages. The plaintiff argued that preemption did not apply to her inadequate warning device evidence because the government failed to send out a diagnostic team to determine whether the conditions at the highway crossing needed automatic gates under 23 C.F.R. § 646.214(b)(3). The Court held that the plain text of the regulation required no such determination to be made by a diagnostic team because the warning devices were approved by the government under subsection (b)(4).

The Court in that case first recognized two factual predicates, prescribed by the FRA regulation, necessary for preemption to occur in *all* highway warning device cases: 1) federal funding participating in 2) the installation of warning devices. *Shanklin,* 529 U.S. at 353 (citing *Easterwood,* 507 U.S. at 671-73). The court then determined that, in addition to federal funding and installation, preemption does not occur until the federal regime ensures that the devices are adequate under *either* the automatic gates criteria found in § 646.214(b)(3) *or* by FHWA approval under (b)(4). The Court determined that "§§ 646.214(b)(3) *or* (4) pre-empt state tort claims concerning *the adequacy* of all warning devices *installed* with the participation of *federal funds.*" *Shanklin,* 529 U.S. at

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 18 of 40

357 (emphasis added); see *also id.* at 354 ("§ 646.214(b)(3) *or* (4) 'is applicable' and determines the type of warning device that is 'adequate' under federal law") (emphasis added). Plaintiffs argued in *Shanklin* that (b)(3) preconditions must still be met even where the preconditions of (b)(4) had concededly been complied with. The Court rejected that argument, because the regulation provided alternative methods of compliance: exercising either (b)(3) *or* (b)(4).

In the present case, Union Pacific points to no regulation permitting alternative methods of compliance. Even if Union Pacific cited such a regulation, there is no evidence that establishes compliance with any particular alternative method.

Thus, *Shanklin* stands for the proposition that, if the (b)(3) option is not exercised, federal regulations require that three activities be performed in lieu of installing automatic gates: (1) that the FHWA approves the warning signs (under (b)(4)), (2) that federal funds participate in the crossing improvement, and (3) that the warning signs are actually installed and operating. The Court found that those preconditions had been met:

> [B]ecause the TDOT determined that warning devices other than automatic gates and flashing lights were appropriate, *its decision was subject to the approval of the FHWA. See § 646.214(b)(4). Once the FHWA approved the project and the signs were installed using federal funds,* the federal standard for adequacy displaced Tennessee statutory and common law addressing the same subject, thereby pre-empting respondent's claim."

*Id.* at 358-59 (emphasis added). Thus, the Court concluded that the precondition of FHWA approval under § 646.214(b)(4) had been met, and that, by the regulation's own terms, § 646.214(b)(3) need not have been redundantly "adhered to." Of course, the Court found that, "It is undisputed that the signs at the Oakwood Church Road crossing were

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 19 of 40

installed and *fully compliant with the federal standards* for such devices at the time of the accident." Id. at 350, Union Pacific now claims that *Shanklin* stands for the rule-swallowing proposition that all negligence claims are preempted where there is a regulation that addresses the subject matter of the common law duty sought to be enforced, regardless of whether the preconditions of those regulations were met. Union Pacific also claims that *Shanklin* does not permit enforcement of common law duties that parallel the federal regulations. But the *Shanklin* court expressly rejected this position when it re-adopted the argument the government advocated in *Easterwood*.

> [T]he Government stated that § 646.214(b) requires gate arms in certain circumstances, and requires *FHWA approval* of the safety devices *in all other circumstances.* Thus, the warning devices in place at a crossing improved with the use of federal funds have, by definition, been specifically found to be adequate under a regulation issued by the Secretary. Any state rule that *more or different* crossing devices were necessary at a federally funded crossing is therefore preempted. *Id.,* at 24. Thus, *Easterwood* adopted the FHWA's own understanding of the application of §§646.214(b)(3) and (4), a regulation that the agency had been administering for 17 years.

*Shanklin,* 529 U.S. at 354-55 (emphasis added). Thus, under *Shanklin,* meeting the preconditions is still required, and common law duties that are not "more or different" than federal regulations may still be enforced. This is the same standard adopted by the Court in *Bates,* a case in which the federal preemption statute (FIFRA) stated that states shall not impose any requirements "*in addition to or different from"* those required by fungicide regulations. *Bates* v. *Dow Agrosciences, LLC,* 544 U.S. 431, 447 (2005). The

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 20 of 40

Court refused to apply preemption principles where the common law duty sought to be enforced was no different than the federal standards themselves. The Supreme Court's interpretation of the FRSA preemption statute requires precisely the same result.

This reality was demonstrated conclusively when the *Shanklin* Court "remanded for further proceedings consistent with this opinion." 529 U.S. at 359. On remand, the widow and the estate retried their case on evidence that the site lines at the crossing were blocked by vegetation in violation of federal regulations. The second *Shanklin* trial resulted in a $1,434,014.60 award, more than double the amount from the first trial. The railroad appealed, claiming preemption by a federal regulation addressing "vegetation." The Sixth Circuit concluded that the vegetation regulation applied only to vegetation at the crossing, not to vegetation down the tracks where the negligent growth occurred. *Shanklin v. Norfolk S. Ry. Co.,* 369 F.3d 978, 987-88 (6th Cir. 2004), *reh'g en banc denied* (July 29, 2004). The railroad this time had not complied with the regulation, and the jury award was affirmed. *Id.* at 994. The railroad thus stands on sinking sand when it announces that under *Shanklin* it can violate federal regulations and not be sued for civil damages.

Defendant erroneously relies heavily on *Ouellette v. Union Tank Car Co.,* 902 F. Supp. 5 (D. Mass. 1995), which is no longer good law, to buttress its perverse conclusion that non- compliance with regulations is irrelevant under the FRSA. The sole underpinning of *Ouellette* is the overly broad language in a First Circuit case, *Talbott v. C.R. Bard, Inc., 63* F.3d 25, 29 (1st Cir. 1995), which interpreted not the preemption clause of the FRSA, but of the Medical Device Act ("MDA"). Ignoring the holding in

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 21 of 40

*Easterwood th*e district court in *Ouellette d*etermined that the FRSA "preempted the field." Of course, it is impossible to reconcile the Supreme Court's permission of common law claims to proceed for negligent construction of a highway crossing in *Easterwood* if the FRSA preempts the field as the court in *Ouellette* found. The conclusion Defendant draws from *Ouellette* is thus plainly contradicted by *Easterwood.* Furthermore, another federal court since recognized that the MDA non-compliance rationale of *Talbott,* and thus *Ouellette,* has been overruled. *Nippon Yusen Kaisha v. Birlington N. Santa Fe Ry. Co,* 367 F. Supp. 2d 1292, 1302 n.9 (C.D. Cal. 2005). In that case, the court correctly determined that the Supreme Court rejected the *Talbott* analysis in *Medtronic, Inc. v. Lohr,* 518 U.S. 470 (1996), which was decided after *Ouellette. See* 518 U.S. at 487 (explicitly rejecting the argument that the MDA entirely preempted all suits because "it would create the perverse effect of granting complete immunity from ... liability to an entire industry that, in the judgment of Congress, needed more stringent regulation").

Finally, this court should not adopt the overruled rationale of an erroneous district court outside this Circuit. The Eighth Circuit has never cited *Ouellette* with approval. To the contrary, Eighth Circuit precedent requires compliance with applicable FRA regulations in order to preempt common law duties. *See Kiemele,* 93 F.3d at 476 (fully funded and installed warning devices still had no preemptive affect because they had lost reflectivity and no longer met preconditions of regulation); *see also St. Louis* S. *W. Ry. v. Malone Freight Lines, Inc.,* 39 F.3d 864, 867 (8th Cir. 1994) (no preemption attached where warning devices were not yet installed in compliance with regulation).

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 22 of 40

*Easterwood* and the *Shanklin* cases represent the state of the law. They each permit railroad negligence cases to go forward in the face of FRSA regulation that is surprisingly close to providing "coverage." These cases confirm not only that state law claims may go forward and that Defendant's total preemption claims won't hold water, they also confirm that preemption is disfavored and reluctantly applied only after the most careful fact by fact, regulation by regulation, analysis. Defendant's motion runs headlong into these Supreme Court authorities and fails as a matter of *stare decisis.* Preemption simply does not apply in this case.

### 3.    *Scottsbluff* Did Not Create a Broader Preemption Standard.

Defendant's fictitious preemption standard is so broad that it characterizes the subject matter of Plaintiff's claims as railroad safety, and then claims that the FRSA generally preempts the state regulation of railroad safety. In actuality, however, courts "eschew[] broad categories such as 'railroad safety'" in determining whether a federal regulation "substantially subsumes" a particular subject matter. *United Transp. Union v. Foster,* 205 F.3d 851, 860 (5th Cir. 2000). "[A]n overly broad characterization of the subject matter - e.g., 'rail safety' - would render the [preemption] analysis meaningless because all FRA regulations cover this concern." *Union Pac. R.R. Co.* v. *California Pub. Util. Comm'n,* 109 F. Supp. 2d 1186, 1194 (N.D. Cal. 2000), *aff'd & rev'd in part by Union Pac. R.R. Co. I,. California Pub. Util. Comm'n,* 346 F.3d 851 (9th Cir. 2003).

Rather, the courts focus their FRSA preemption analyses with particularity, examining the "specific subject matter" of the federal regulation and interpreting each regulation "narrowly to ensure that the careful balance that Congress has struck between

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 23 of 40

state and federal regulatory authority is not improperly disrupted in favor of the federal government." *United Transp. Union,* 205 F.3d at 860; *see* In *re Miamisburg Train Derailment Litig.,* 626 N.E.2d 85, 93 (Ohio 1994) ("'[I]n light of the relatively stringent standard set by the language of [FRSA] ... we are not prepared to find pre-emption solely on the strength' of a general provision.") (quoting *Easterwood,* 507 U.S. at 668).

Defendant also argues that the circuit court's recent decision in *In re: Derailment Cases,* 416 F.3d 787 (8th Cir. 2005) *("Scottsbluff"),* requires this Court to grant them immunity from all claims. However, that holding does nothing to change Supreme Court and Eighth Circuit law requiring compliance with applicable regulations before they carry preemptive force. Nor does it alter the fact that *common law tort duties cannot be displaced when the subject matter is neither substantially subsumed nor even addressed by federal regulations.*

*Scottsbluff* involved a derailment caused by a draft key (bolt) falling out of a coupler on a freight car. The plaintiff there alleged three specific claims: (1) breach of common law duty to adequately inspect the freight car; (2) negligence per se (based upon violations of the Clean Air Act); and (3) strict liability. The only claim before the Eighth Circuit involving FRSA analysis was the plaintiff's first claim, negligent inspection.

Two key factors distinguish this case from *Scottsbluff:* in *Scottsbluff,* there was (1) no evidence of the railroad's failure to comply with federal inspection standards, and (2) no evidence that the derailment was related in any way to the inspection. In fact, there was absolutely no evidence that any party was at fault at all. *See* 416 F.3d at 791 ("For unknown reasons, the draft key fell out of the coupler.") And despite the plaintiff's

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 24 of 40

arguments to the contrary, there was no evidence that the railroad failed to comply with

the inspection regulations:

> The FRA has adopted regulations that require inspections
> of freight cars at each location where they are placed in a
> train. 49 C.F.R. § 215.13. Railroads must designate
> inspectors who "have demonstrated to the railroad a
> knowledge and ability to inspect railroad freight cars for
> compliance with the [FRA regulations]." Id. at § 215.11.
> The FRA's regulations specify that a railroad may not place
> or continue in service a car that, *inter alia,* has a defective
> coupler, id. at § 215.123, or a defective draft key retainer
> assembly, id. at § 215.127.

*Id.* at 793. The court acknowledged defendants' compliance with these regulations:

> Two days prior to the derailment, MRL employees had
> performed a federally mandated inspection of the freight
> cars at a rail yard in Laurel, Montana. MRL assigned two-
> man crews to inspect the cars while riding alongside them
> on four-wheel all terrain vehicles (ATVs). From the ATVs,
> the inspectors visually inspected various aspects of the cars,
> including the couplers.

*Id.* at 792 (emphasis added). Thus, the court concluded that the railroad had complied

with the inspection mandated by the federal regulations.[6] Furthermore, there was no

---

[6] In fact, Montana Rail Link ("MRL")(the railroad company whose inspections were at issue), conceded both to the district court and to the Eighth Circuit court at oral argument that a claim of noncompliance with federal law would not be preempted. When the district court asked the MRL attorney whether the plaintiff would win if the inspector failed to see a defect, she stated, "Well, then the answer to the first question would be that MRL failed to comply with the inspections and you go on to the second question, which is did this failure cause the derailment." The court then said, "But assume they prove causation. Does he win?" She answered, "Probably yes."

When the Eighth Circuit panel asked MRL counsel about this statement to the district court, she stated, "My confession was that if there had been some sort of a violation of federal regulation that Mr. Brenner could prove, and that was the next point in my argument. That yes, there could be; there might be an argument here. If, for example, Mr. Brenner could prove that this inspection was never done. Or if he could prove, which the court was asking, that our inspectors were not qualified according to the FRA regulations, then there might be a cause of action."

MRL counsel concluded their oral argument: "[W]e conducted the inspection in compliance with the regulations and therefore any argument that we should have done something different or more is preempted." MRL's concession that noncompliance would be actionable, along with the significant and

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 25 of 40

evidence that the coupler or draft key was defective in violation of § 215.123 or § 215.127. *Defendant completely ignores these crucial aspects of the case.*

But even if, *arguendo, Scottsbluff* stood for the proposition that compliance with freight car inspection regulations is not required in order to create preemptive force, the facts in question here are quite different from the freight car inspection regulations in *Scottsbluff.* The Eighth Circuit specifically limited its analysis in *Scottsbluff:* "[W]e look to the extent to which the regulations adopted pursuant to the FRSA address freight train inspection provisions." 416 F.3d at 793. In the present case, discovery will reveal what caused the accident and subsequent damages; no one knows which regulations apply or whether any regulations apply.

Much has been made of the ***Scottsbluff*** court's reference to avoiding "bureaucratic micromanagement." What the court meant, as the holding makes abundantly clear, is that once the federal regulations prescribe what is to be done, and by whom, during a rail car inspection, no one can further question the manner in which the inspection was performed. The railroad had done what the regulation required. No additional standards could be applied.

The district court in Minnesota distinguished Scottsbluff from a derailment in Minot, North Dakota, and permitted Plaintiffs' claims to go forward. In Minot, the railroad defendant's train derailed after a joint bar in the rail cracked. Hundreds of thousands of gallons of anhydrous ammonia explosively vaporized and injured thousands

---

undisputed fact that the *Scottsbluff* plaintiff had *no evidence of noncompliance*, reveals that the *Scottsbluff* decision is based upon narrow facts. It is not contrary to established Eighth Circuit or Supreme Court law.

---

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 26 of 40

of Minot residents. When the railroad argued that Scottsbluff eradicated all of the plaintiffs' claims, the district court disagreed, holding,

> [M]any of the claims and facts in *Scottsbluff* differ materially and substantially from those of the Minot Derailment. * * * In addition to the negligent inspection claim, the Minot Derailment Plaintiffs also assert *inter alia* that Defendants failed to implement their own rules regarding maintenance, replacement and anchoring of temporary joint bars. Further, the Minot Derailment Plaintiffs assert claims that implicated federal regulations which were too general to establish coverage ..., and claims for which there was no regulation at all . . ..

In re *Soo Line R.R. Co. Derailment of January 18, 2002 in Minot, ND,* 2006 WL 1153359, *21 (Minn. Dist. Ct. April 24, 2006) (Exh. A).  Defendant in the present motion erroneously fails to contemplate the discovery of facts which may (1) implicate regulations that do not "substantially subsume" the subject matter, (2) implicate a failure to follow internal rules whose subject matter the FRA has expressly ceded to railroads, or (3) implicate no regulations at all. Plaintiffs must be permitted to discover the presence of any such facts.

**D.    DEFENDANT'S OVERLY BROAD "COVERAGE" ARGUMENTS FAIL AS A MATTER OF LAW**

**1.    Union Pacific Confuses the HMTA with the FRSA.**

Union Pacific first argues that federal regulations "cover" duties related to hazardous materials, and that Plaintiffs have alleged that Union Pacific caused hazardous materials to be discharged. To springboard these bare notice pleadings into preempted evidence, Union Pacific cites the powers of the Secretary to enact regulations concerning the handling and transport of hazardous materials under 49 U.S.C. §§ 5106 and 5103, which are part of the Hazardous Materials Transportation Act ("HMTA"). Plaintiffs

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 27 of 40

concede that the Secretary capitalized on such powers and has promulgated such regulations. *See generally* 49 C.F.R. §§ 171-80.

The problem for the railroad is that the federal enabling statute regarding hazardous materials has its own scope-of-preemption section, called, of all things, "Preemption." 49 U.S.C. § 5125. Union Pacific ignores this provision and argues instead that § 20106, the FRSA preemption statute, negotiates the preemptive scope of hazmat regulations. Of course, given the independent provisions defining the scope of hazmat rules, the plain text of and decisional law interpreting § 20106, which deals only with rail safety, cannot possibly apply to Chapter 51 or its implementing regulations. Defendant thus errs twice: (1) it completely ignores § 5125 and (2) instead analyzes HMTA regulations under the § 20106 FRSA preemption standard.[7] Equally troubling is the fact that a federal court in North Dakota did the same thing in *Mehl* v. *Canadian Par. Ry., Ltd.,* a clearly erroneous case upon which Union Pacific heavily relies throughout its brief.

The statute, which defines the conditions under which HMTA regulations carry preemptive effect, permits states to prescribe requirements for hazardous material handling as long as "complying" with federal regulations is still possible and the requirement is not an "obstacle to accomplishing and carrying out" the federal hazmat rules. § 5125(a). State regulations regarding packaging, labeling, and handling hazardous materials must be "substantively the same," and if they are, they are not preempted. Id. at § 5125(b). HMTA's preemption statute says nothing about common law duties. Under the

---

[7] Of course, as discussed thoroughly elsewhere in this memorandum, Union Pacific's analysis of § 20106's preemptive scope is wholly derelict, even with regard to FRSA regulations.

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 28 of 40

express terms of the statute, however, even if it were to apply to common law duties, such duties may be imposed as long as they parallel the federal regulations. By definition, a common law standard that parallels the federal HMTA standard cannot be preempted. *See Lyall v. Leslie's Poolmart*, 984 F. Supp. 587, 598 (E.D. Mich. 1997) (court held duty of care under state negligence law was not preempted by 49 U.S.C. § 5125 where there was *"no conflict* between plaintiff's product liability action and requirements under the HMTA); *Nat'l Tank Truck Carriers, Inc. v. Burke,* 535 F. Supp. 509, 514-15 (D.R.I. 1982) (court held state regulations regarding hazardous materials 'must actually conflict with the HMTA in order to be deemed inconsistent with it" for purposes of preempting state enforcement).

Discovery will show whether the accident-causing activities in this case are (1) actually addressed by the HMTA regulations and (2) the railroad actually complied with any of the plethora of HMTA standards of which Union Pacific is so obviously aware. Judgment is thus premature.

Defendant nevertheless concludes that FRSA preemption applies to the HMTA and its regulations. Defendant cites *CSX Tramp.,* Inc. *v. Pub. Util. Com'n of Ohio,* 901 F.2d 497, 501 (6th Cir. 1990). However, that court expressly acknowledged that the HMTA has its own scope- of-preemption provision, as Plaintiff has already shown. *CSX Transportation, Inc.,* involved Ohio's attempt to regulate *the transportation* of hazardous materials *by rail.* 901 F.2d at 498. That court explicitly acknowledged that Congress purposely excluded the HMTA from FRSA preemption standards. Id. at 501. Thus, the court limited application of the FRSA preemption analysis to HMTA "as it relates to the

---

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

*transportation* of hazardous materials *by rail.*" Id. Defendant ignores this narrow scope.

In the present case, Plaintiff fully expects to discover facts demonstrating that the hazardous material(s) in question were not being transported by rail at the time of the disaster. Rather, hazmat was being stored on the tracks. If a train collided with a semi-tractor-tanker full of hazmat, would FRSA preemption analysis be applied to the truck driver's potential negligence? Of course not, even under CSX *Transportation, Inc. A* parked tank car sitting on the tracks is no different.

## 2. Regulations Addressing "Fatigue" Do Not Preempt Actual Negligence.

Given the fact that Plaintiffs need not, at this stage, plead the particularities of how or why the accident was caused, Plaintiff's mere mention of the word "fatigue" in her complaint cannot possibly trigger preemption by the handful of regulations cited. The railroad cannot even identify which particular fatigue regulation "covers" the subject matter of the common law duty sought to be enforced. The Court is presented instead with a regulation related to "train employees," "signal employees," and "dispatching service employees." Def. Br, at 17-18.  In casting such a broad net, apparently in an effort to ensnare any possible "fatigue claim," Defendant betrays the very requirement that the federal regulations must "substantially subsume," rather than merely "touch upon" or "relate to," the subject matter of the common law duty breached. *Easterwood,* 507 U.S. at 664-65. It is unknown at this stage of discovery whether signal employees or dispatching service employees were even involved.

Moreover, when one actually reads the statutory subsections of Chapter 211 and the regulations cited by Union Pacific, none mentions "fatigue" at all. Instead, they

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 30 of 40

describe prophylactic measures regarding mandatory rest periods. Defendant has failed to cite a single case, and Plaintiffs found none, where Chapter 211 or its regulations preempted the enforcement of common law duties not to crash into stationary objects. Furthermore, Plaintiffs have not asserted that Union Pacific's employees should have received "additional" hours of sleep or amounts "incompatible" with those required by federal statute. Again, the Supreme Court has indicated that the FRSA's preemption clause permits the enforcement of common law duties that are not "additional" to and "incompatible with" FRSA regulations. 507 U.S. at 674-75 (excessive speed claim was preempted because train was well within federal speed limit and state common law duty sought to be enforced, i.e. stricter speed limit, would have been "additional" to and "incompatible with" federal standard). Discovery will reveal whether railroad employees were actually fatigued. There is no preemption here and Plaintiff must be permitted discovery.

**3.     Inspection and Tank Car Design Regulations Have Nothing to Do with Operating Trains and Failure to Avoid an Individual, Specific Hazard.**

Plaintiffs have generally pled, and this cannot be a surprise, that Union Pacific negligently operated its train and rail cars. Union Pacific draws upon several unrelated regulations in an attempt to subvert this general averment. Defendant cites regulations touching on the following:

1. Engineer training and certification
2. Design of railcars
3. Inspection of railcars
4. Marking devices for rear end train cars
5. Brake system safety
6. End of train telemetry devices

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
*Pursuant to Fed. R. Civ. P. 12(b)(6)*

Page 31 of 40

7. Installation, inspection, maintenance, and repair of signal and train control systems, devices and appliances

What do these regulations have to do with failing to avoid a collision with a large, stationary object on the tracks? The Defendant has no answer to this question, other than that it has attempted to demonstrate that some regulations "touch upon" or "relate to" the subject matter, which is not enough to trigger preemption. *Easterwood,* 507 U.S. at 664-65.

Furthermore, Plaintiff has not alleged that Defendant ought to have done more than those federal regulations require. Plaintiffs are also yet without facts to determine whether Defendant met the preconditions of any of the cited regulations. *See Easterwood,* 507 U.S. at 671 (necessary step to any FRSA preemption analysis "is whether the preconditions for the application of either regulation have been met"). Discovery will illuminate the facts, and consideration of the issue at this juncture is premature.

Union Pacific also cites a speed regulation, which requires trains within yards to "move prepared to stop within one half the range of vision but not exceeding 20 m.p.h." 49 C.F.R. § 218,35(b)(2). However, Defendant fails to notify the Court of the venerable and unanimously applied exception to speed limit preemption -the duty to stop or slow down to avoid the presence of a "specific, individual hazard."

In *Easterwood,* the Court held, where a train had been traveling well below the federally established maximum speed limit at the time of a collision at a highway crossing, the railroad could not be held to a common law standard "additional" to and "incompatible with" the federal regulation. 507 U.S. at 674-75. Because the train complied with the maximum speed limit outlined in the regulations, the plaintiff's claim

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 32 of 40

that the "train was traveling too quickly given the 'time and place'" was preempted. Time and place, the Court determined, were already accounted for by the speed regulations. However, the Court expressly acknowledged the parties agreement "that the pre-emption of [plaintiff-]respondent's excessive speed claim does not bar suit for breach of related tort law duties, such as the *duty to slow or stop a train to avoid a specific, individual hazard*." 507 U.S. at 675 n .15 (emphasis added). The Court stayed its hand regarding whether such a claim could possibly be preempted.

Since the Court's decision in *Easterwood,* Courts have unanimously acknowledged that the common law duty to slow or stop a train to avoid a specific, individual hazard is not preempted by speed regulations. While debate has stirred over what constitutes a specific, individual hazard, it is clear that "[a] 'specific, individual hazard' is not to be confused with the statutory 'essentially local safety hazard' set forth in 49 U.S.C. § 20106." *Stevenson v. Union Pac. Ry. Co.,* 110F. Supp. 2d 1086, 1088-89 (E.D. Ark. 2000) (Wilson, J.). Rather,

> It has been consistently emphasized that the kinds of conditions that could constitute a "specific individual hazard" are limited to *transient conditions* that could lead to an imminent collision, such as a child standing on the railway or a motorist stranded on a crossing or improperly *parked tank cars* which obstruct the view of the train engineer.

*Baker v. Canadian Nat'l/Illinois Cent. Ry. Co.,* 397 F. Supp. 2d 803, 813 (S.D. Miss. 2005) (emphasis added). The federal district court in Arkansas has recognized a plethora of circumstances under which the common law duty imposed on railroads to slow or stop their trains cannot be preempted by the general provisions of federal speed limits.

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 33 of 40

Courts have found specific, individual hazards existed where a train crew saw or should have seen a child or a car on the track. *See, e.g., Bashir* v. *National R.R. Passenger Corp.,* 929 F. Supp. 404, 412 (S.D. Fla.1996) (child standing on the track); *Shaup v. Frederickson,* 1998 WL 726650 (E.D. Pa.1998) (plaintiff's car stranded on the tracks); *Central Georgia R.R. Co. v. Markert,* 200 Ga. App, 851, 410 S.E.2d 437 (1991) (imminent collision with car crossing the track); *Florida East Coast Ry. Co.* 11. *Griffin,* 566 So. 2d 1321 (Fla. App. 1990) (13-year-old child hit by train while attempting to cross tracks on way home from school).

*Stevenson,* 110 F. Supp. 2d at 1090. While a tank car may be expected to be sitting in a train yard, it is not a condition that is "continuously present" in a particular place over time, requiring every passing train to slow down or stop at that particular place. Ephemeral hazards are thus specific and individual, even though they may be expected to exist on the tracks from time to time. *See id.* (citing *Herriman v. Conrail Inc.,* 883 F. Supp. 303 (N.D. Ind. 1995), for proposition that artificial lights mounted on nearby building did not constitute specific, individual hazard because of their permanence, impacting all trains that passed). In *Herriman,* the court distinguished the permanent lights "from the obvious case of an individual hazard -i.e. an engineer who sees a motorist stranded on the crossing, but nevertheless fails to stop or slow his train to avoid the collision." The court in *Stevenson* also recognized that an additional duty to slow the train may be enforced at common law due to ephemeral weather conditions like a snowstorm, citing *Bakhuyzen v. Nat'l R.R. Passenger Corp.,* 20 F. Supp. 2d 11 13, 11 18 (W.D. Mich. 1996). 110 F. Supp. 2d at 1090-91.

Furthermore, the duty to slow down or stop to avoid an actual object or person on the tracks must not be confused with an alleged duty generally to proceed slower than the

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 34 of 40

speed limit in order to avoid *the mere likelihood* of hazards such as people or objects. In *Bashir v. National Railroad Passenger Corp.*, the defendants' train struck a pedestrian who was attempting to cross the tracks at a highway crossing. 929 F.Supp. 404, 408 (S.D. Fla. 1996). The plaintiff alleged that the defendants were negligent "[b]y failing to stop the train prior to striking the persons crossing the tracks." *Id.* at 412. The court held, "This claim alone may stand against each defendant." *Id.* Relying on *Easterwood*, the court was careful to distinguish the duty to avoid striking something actually on the tracks, under the "specific, individual hazard" exception, from the general "failure to proceed slowly along the tracks in order to avoid *the likelihood* of hazards such as the Decedent," without regard to whether there is actually anything blocking the right of way. *Id.* at 412 n.5 (emphasis added). In *Stevenson*, Judge Wilson approvingly expounded on the *Bashir* analysis. 110 F. Supp. 2d at 1090.

In the present case, Plaintiff is not arguing that the railroad should have generally maintained a slower speed due to the mere possibility of colliding with cars in the train yard, which is the circumstance addressed by the regulation. Plaintiff argues, however, that the railroad *negligently failed to stop to avoid the specific, individual hazard* that actually existed on the track: a stationary tank car that the engineer "saw or should have seen." *Stevenson*, 110 F. Supp. 2d at 1090. The regulations do not address such a blatantly negligent act, and, because of that, the Supreme Court has framed the obvious exception. *Easterwood*, 507 U.S. at 675 n.15. Should the facts in this case indicate that the engineer "saw or should have seen" the ephemerally placed, stationary car on the

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 35 of 40

tracks, such evidence cannot be excluded as preempted, nor should summary judgment or dismissal be granted to the railroad.

One of the few facts known about this accident is that the moving train failed to avoid the specific individual hazard on its line, i.e. a parked train. We know it failed to sufficiently slow or stop because it crashed into a stationary train car. These are exactly the kind of circumstances that Judge Wilson recognized as being a tort issue outside the preemption analytical framework.

### 4. Compensatory and Punitive Damages Are Not Preempted by Penalty Provisions in the FRSA and HMTA.

Civil plaintiffs in tort actions are limited in their recoveries to money damages for their injuries. They have no ability to "force" a defendant to do a particular thing, save the occasional injunction. Plaintiffs in this case do not press for an injunction or FRSA-created penalty of any sort.

Defendant yet cites the "exclusive authority" of the FRA to impose a "civil penalty," "injunction," or "compliance order" under 49 U.S.C. § 201 11, and cites the Secretary of Transportation's ability to impose a "penalty" for violations of the HMTA and its regulations. Def. Br. at 19-21. Defendant's argument reveals that § 20106, the FRSA preemption statute, has nothing to do with its "penalty" analysis, yet it claims preemption.

But the "exclusive authority" section of the statute deals solely with the FRA's imposition of civil *penalties and injunctions* provided for by statute and regulations. Plaintiff readily admits it has no ability to impose the civil penalties promulgated by the FRA or to order railroads to perform a specific task prospectively. Plaintiff's common

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 36 of 40

law claims for *damages* are, by definition, not the penalties or injunctions engendered by the FRSA

Unfortunately, two courts have ignored the FRSA's solicitude for state law compensatory schemes and have improperly used § 20111 as an independent basis to dismiss any common law claim arising from a train accident. *See Mehl; Kalan,* cited by Defendant. But, with due respect, those isolated opinions create from whole cloth the idea that 49 U.S.C. § 20111(a), the FRSA's provision of "exclusive authority" to impose civil penalties and injunctions, preempts common law claims for damages. *No other court has ever preempted* a common law damages claim based on § 201111(a). *Scottsbluff,* 416 F.3d 787, does not even mention § 201111 or make reference to its content. The idea that the *Mehl* court was bound to such a finding by *Scottsbluff* comes out of thin air.

Neither does the *Kalan* court's parallel citation to *Abate v. S. Pac. Transp. Co.,* 928 F.2d 167, 170 (5th Cir. 1991), support preemption of common law claims under § 201111 or any other section. *Abate* dealt solely with the issue of whether a railroad employee could claim "an implied right of action under the Federal Railroad Safety Act ... and the implementing regulations governing federally-mandated drug-testing programs." 928 F.2d at 168. That the Fifth Circuit found no such cause of action created by the FRSA is no surprise, particularly in light of the fact that the FRSA does not create a federal cause of action. *Abate* has nothing to do with preemption and the *Kalan* and *Mehl* courts clearly erred.

Furthermore, if common law duties were preempted solely on the strength of the exclusive ability of the FRA to impose a statutory penalty, the Supreme Court's opinions

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 37 of 40

in both *Easterwood* and *Shanklin,* wherein claims for negligence were remanded for trial despite findings of partial preemption, would be eviscerated. No claim could survive. In the context of the Atomic Energy Act, whose subject matter is unquestionably federal, the Supreme Court has rejected the very rule Union Pacific proposes. In *Silkwood* v. *Kerr-McGee Corp.,* 464 U.S. 238 (1984). the Court held,

> [T]he award of punitive damages in the present case does not conflict with [the federal] scheme [of regulatory penalties]. Paying both federal fines and state-imposed punitive damages for the same incident would not appear to be physically impossible. *Nor does exposure to punitive damages frustrate any purpose of the federal remedial scheme.*
>
> * * *
>
> Congress did not believe that it was inconsistent to vest the NRC with *exclusive regulatory authority* over the safety aspects of nuclear development while at the same time *allowing plaintiffs like Mr. Silkwood to recover for injuries* caused by nuclear hazards.

464 U.S. at 257 (emphasis added). In the context of the Minot derailment, the railroad argued that the exclusive authority provision preempted all claims. The district court in Minnesota held,

> The problem for Defendants is that the plain language of the statute does not say what Defendants want it to say. 49 U.S.C. § 201111(a)(l) merely addresses the Secretary's "exclusive authority" to impose "civil penalties" and "injunctions" on railroads for conduct which contravenes the regulations. Stated another way, the Secretary's "exclusive authority" prevents local governmental agencies in the state where a violation occurs from imposing their own fines and injunctions on the railroad. That the "exclusive authority" language does not address state tort claims is supported by *Easterwood.* 507 U.S. at 668. Discussing the need to use a stringent standard for coverage under FRSA, the *Easterwood* Court stated "given that *the*

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 38 of 40

> *regulations provide no affirmative indication of their effect on negligence law,"* id. (emphasis added), the regulation must be sufficiently specific to "substantially subsume the subject matter." *Id.* at 664.

*In re Soo Line R.R. Co. Derailment of January 18, 2002 in Minot, ND,* 2006 WL 1153359, *24 (Minn. Dist. Ct. April 24, 2006) (Exh. A). Thus, the exclusive authority of a federal agency, like the FRA, to issue civil penalties cannot stand as an independent basis to preempt state law claims for compensatory or punitive damages.

### III.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court deny Defendant's Motion in its entirety.

Respectfully Submitted,


/s/ R. Benjamin King

Brady Paddock
bpaddock@nixlawfirm.com
Arkansas Bar No. 93135

R. Benjamin King
Arkansas Bar No. 2005260
benking@nixlawfirm.com
**NIX, PATTERSON & ROACH, L.L.P.**
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
Phone: (903) 223-3999
Facsimile: (903) 223-8520

Matt Keil
mkeil@kglawfirm.com
Arkansas Bar No. 86099

John Goodson

---

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

jcgoodson@kglawfirm.com
Arkansas Bar No. 90018

Shorty Barrett
sbarrett@kglawfirm.com
Arkansas Bar No. 2006066
**KEIL & GOODSON**
611 Pecan
Texarkana, Arkansas 71854
Phone: (870) 772-4113
Facsimile: (870) 773-2967

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record in the above action who have agreed to service by electronic filing on this 5th day of September, 2006.

/s/ R. Benjamin King
R. Benjamin King

Plaintiff Memorandum in Opposition to Union
Pacific Railroad Company's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(6)

Page 40 of 40