# EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| Nichole Y. Sartor | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | No. 06-4044 |
| | § | |
| Union Pacific Corporation, | § | |
| Union Pacific Railroad Company, | § | |
| *Defendants*. | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER RESPONSE TO
UNION PACIFIC CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**

COMES NOW, Plaintiff Nichole Sartor, and files this Response to Defendant Union Pacific Corporation's ("UPC") Memorandum in Support of its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), and would ask the Court to deny UPC's motion in its entirety. In support thereof, Plaintiff would respectfully show the Court as follows:

## I. BACKGROUND

One of America's leading transportation companies, Union Pacific Corporation ("UPC"), and its wholly owned subsidiary, Union Pacific Railroad Company ("UPRR"), are defendants in an action brought in this Court by Nichole Sartor ("Sartor"). Sartor filed this action because UPC and UPRR's negligence caused a massive explosion on October 15, 2006, in Texarkana, Arkansas that completely obliterated a house Sartor

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

Page 1 of 16

owned and also severely damaged or destroyed Sartor's personal property. Specifically, during the morning hours on October 15, 2005, a Union Pacific train collided with another Union Pacific train resulting in the derailment of multiple railcars. These two trains were believed to be transporting, among other things, highly flammable and dangerous chemicals such as propylene. The collision and derailment resulted in the rupture of at least one railcar causing the release of propylene and possibly other dangerous chemical into the surrounding area. The released chemicals ignited causing multiple explosions and resulted in the death of one individual and the complete destruction of multiple homes and personal property, including Sartor's house and personal property located at 105 Jackson Street.

Sartor filed suit against UPC and UPRR on June 2, 2006. In response, Defendant UPC moved for dismissal based on Federal Rule of Civil Procedure 12(b)(2) claiming that this Court lacks personal jurisdiction over it. However, because UPC is one of America's leading transportation companies and has significant contacts with the state of Arkansas it should reasonably anticipate being haled into court in Arkansas. Additionally, the Court's exercise of personal jurisdiction over Defendant UPC easily comports with traditional notions of fair play and substantial justice.

## II. ARGUMENT

### A. PERSONAL JURISDICTION ANALYSIS

In diversity lawsuits, federal courts may exercise jurisdiction over a nonresident defendant consistent with the reach of the forum state's long-arm statute and in accordance with due process requirements. *See Burlington Indus., Inc. v. Maples Indus.,*

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

Page 2 of 16

*Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). In Arkansas, the state courts may exercise jurisdiction "to the maximum extent permitted by the due process clause of the Fourteenth Amendment of the United States Constitution." ARK. CODE ANN. § 16-4-101.

In order for the Court to exercise jurisdiction over UPC consistent with due process, UPC must have minimum contacts with Arkansas "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945). UPC's contacts with the state of Arkansas must be such that it would "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). A court may exercise "specific" or "general" jurisdiction. To assert specific jurisdiction, a nonresident defendant's activities must be purposefully directed to the forum state and the litigation must have resulted from injuries that "arise out of" or "relate to" those activities. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). To exercise general jurisdiction, the Court must find that a nonresident defendant's contacts with the forum state are continuous and systematic. *Id.* at 416.

**B. UNION PACIFIC CORPORATION HAS SUFFICIENT MINIMUM CONTACTS WITH THE STATE OF ARKANSAS TO SUPPORT THIS COURT'S ASSERTION OF JURISDICTION**

**1. UPC Does Operate Within the Borders of the State of Arkansas**

The officers of UPC make conflicting representations regarding the operations of UPC within and throughout the state of Arkansas. In support of its motion to dismiss,

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

UPC offers the sworn-to and subscribed affidavit of C.W. Saylors, an assistant secretary for *both* UPC and UPRR. In his affidavit, Mr. Saylors affirmatively represents that "Union Pacific Corporation…does not operate, repair, maintain or inspect railcars in the State of Arkansas or any other state. Union Pacific Corporation has no contacts in Arkansas that might in any way be characterized as continuous or substantial business activity in Arkansas." Affidavit of C.W. Saylors, ¶ 4. In contrast, UPC makes conflicting statements in its most recent public 10-K filing with the Securities and Exchange Commission. This document's accuracy is sworn and attested by the executives of UPC. In that document, UPC appears to assert that it operates in 23 separate states and owns and/or operates numerous assets in those states for the continued operation of its rail business. Specifically, and by way of example only, UPC asserts:

> With operations in 23 states, [Union Pacific Corporation and its subsidiaries][1] employ a variety of assets in the management and operation of [Union Pacific Corporation and its subsidiaries'] rail business. These assets include real estate, track and track structure, equipment, and facilities. [Union Pacific Corporation and its subsidiaries] own and lease real estate that [Union Pacific Corporation and its subsidiaries] use in [Union Pacific Corporation and its subsidiaries'] operations….[Union Pacific Corporation and its subsidiaries] operate numerous facilities, including terminals for intermodal and other freight; rail yards for train-building, switching, storage-in-transit…and other activities; offices to administer and manage [Union Pacific Corporation and its subsidiaries'] operations; dispatch centers to direct traffic on [Union Pacific Corporation and its subsidiaries'] rail network; crew quarters to house train crews along [Union Pacific Corporation and its

---

[1] In UPC's 2005 10-K, references to "'UPC', 'Corporation', 'we', 'us', and 'our' shall mean Union Pacific Corporation and its subsidiaries, including Union Pacific Railroad Company, which [is] separately refer[ed] to as 'UPRR' or the 'Railroad'." UPC 2005 10-K, p. 3.

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

> subsidiaries'] network; and shops and other facilities for fueling, maintenance, and repair of locomotives and repair and maintenance of rail cars and other equipment.

UPC 2005 10-K, p. 9 (Ex. A). Significantly, UPC's 10-K does not contend that it is UPRR that owns, manages, and/or operates these assets, but rather suggests that UPC is itself involved in the ownership, management, and/or operation of these assets. The state of Arkansas is not exempted from the assertion above. The Court should lend more weight to the assertions UPC made in its 10-K as opposed to those that are offered by way of affidavit under the shadow of pending litigation.

In light of the statements made by UPC in its 2005 10-K, this Court's exercise of jurisdiction is certainly appropriate given UPC's "minimum contacts" with the state of Arkansas. Not only are UPC's contacts with Arkansas "continuous and systematic" subjecting it to "general jurisdiction," but Plaintiff's claims also arise out of the specific activities of UPC in owning, managing, and/or operating assets in the state of Arkansas subjecting UPC to "specific jurisdiction."

2. **The Nature of the Relationship Between UPC and UPRR Subjects UPC to Personal Jurisdiction in the State of Arkansas**

Should the Court determine that UPC does not directly own, manage, and/or operate assets within the state of Arkansas in a manner that would subject UPC to the jurisdiction of this Court, Plaintiff would respectfully submit that UPC's relationship with UPRR subjects UPC to the personal jurisdiction of this Court. In accord with Eighth Circuit precedent, one corporation may subject itself to jurisdiction in a state through the activities of another corporation. *See Anderson v. Dassault Aviation*, 361 F.3d 449, 452

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

Page 5 of 16

(8th Cir. 2004). Consequently, it is UPC's close and intertwined relationship with UPRR and UPRR's activities in the state of Arkansas that subject UPC to the jurisdiction of the state of Arkansas and this Court. UPRR is undoubtedly subject to both specific and general jurisdiction in the state of Arkansas[2] due to the fact that this lawsuit is specifically related to UPRR's activities, in combination with those of UPC, relating to the operation of railroads and trains in this state and also due to UPRR's continuous and systematic contacts with the state of Arkansas.

    a.    **Alter Ego or Piercing the Corporate Veil not Required for the Exercise of Personal Jurisdiction Over UPC**

Neither physical presence in Arkansas nor piercing of UPRR's corporate veil is required in order to establish the minimum contacts necessary for the exercise of personal jurisdiction by this Court over UPC. *Anderson v. Dassault Aviation*, 361 F.3d 449, 452 (8th Cir. 2004). "[C]ircumstances in each case much be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute." *Id., citing Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). Determining the propriety of the exercise of personal jurisdiction necessarily involves the application of fairness and reasonableness to the facts of each particular case. *Anderson*, 361 F.3d at 452.

The relationship and shared connections between UPC and UPRR are very similar to those considered by the Eighth Circuit in *Anderson* wherein the court determined that

---

[2] UPRR has not joined in UPC's 12(b)(2) motion to dismiss, and UPC's motion is limited to UPC. *See* UNION PACIFIC CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2), p. 1.

---

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

the exercise of personal jurisdiction over the parent company was proper. In *Anderson*, Dassault Aviation asserted that it was present in the U.S. *through its subsidiary*. *Anderson*, 361 F.3d at 453. UPC makes a similar statement affirmatively asserting that it is "one of America's leading transportation companies" operating primarily as a rail transportation provider *through its wholly owned subsidiary*, UPRR, which is the largest railroad in North America serving 23 states across the western 2/3 of the U.S. *See* Union Pacific Corporation Website, http://www.uprr.com/aboutup/uprrover.shtml (Ex. B). The significance of this statement comes from the fact that it is UPC, not UPRR, that claims to be one of America's leading transportation companies. Additionally, UPRR is UPC's only reportable operating segment and principal source of revenues. UPC 2005 10-K, p. 3. Unfortunately for UPC (at least in regards to its Motion to Dismiss), its involvement and contacts with UPRR create a synergistic relationship between the two entities that goes well beyond "mere ownership."

   **b.**  **As in *Anderson*, UPC and UPRR Share a Common Website That Binds the Two Companies**

As in *Anderson*, UPC and UPRR share a common website – www.up.com.[3] UPC 2005 10-K, p. 3 and UPRR 2005 10-K, p. 4 (Ex. C). (both stating, "Our internet website is www.up.com."). UPRR also incorporates UPC's corporate governance materials as its own in its 2005 10-K stating "UPC's corporate governance materials, including Board Committee charters, governance guidelines and policies, and codes of conduct and ethics

---

[3] Interestingly, when one attempts to access the URL www.uprr.com (the URL from which much information about the two companies is obtained from), they are automatically redirected to www.up.com, the joint website of UPC and UPRR. From there, individuals may access various information about the two companies. UPC and UPRR make no attempt to distinguish the two entities in this regard.

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

for directors, officers, and employees are on our website." UPRR 2005 10-K, p. 4. As in *Anderson*, this website appears to be administered jointly by UPC and UPRR.

### c. As in *Anderson*, UPC and UPRR use a Common Name – "Union Pacific"

One of the most telling aspects of the synergistic relationship between UPC and UPRR is that both companies use common words - "Union Pacific" - in their name, just as in *Anderson. See Anderson*, 361 F.3d at 454. Throughout its website, UPC and UPRR make very little, if any, effort to distinguish the two entities. The website, for example, often references "Union Pacific" or "UP" as opposed to "Union Pacific Corporation" or "Union Pacific Railroad." This fact is highlighted by the "company overview" information presented within the "general public" link on the companies' website, http://www.uprr.com/aboutup/uprrover.shtml, and even in UPC's 2005 Annual Report (Attached as Ex. D). The companies' vision statement also fails to distinguish the two entities by stating, "Union Pacific is committed to be a railroad where our customers want to do business, our employees are proud to work, shareholder value is created and the safety of the public and our employees is our top priority." Who is "Union Pacific"? Is it UPC, UPRR, or both? Plaintiff would respectfully submit that it is both UPC and UPRR.

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

Page 8 of 16

### d. As in *Anderson*, UPC and UPRR Share Common Officers and Directors

As in *Anderson*, UPC and UPRR also share the same executive officers[4] and directors.[5] Importantly, key officers such as the Chairman, President and CEO, Executive VP of Finance and CFO, Sr. VP of Strategic Planning, and the Sr. VP of Human Resources share the same position within both UPC and UPRR. UPC also chose to offer the affidavit of C.W. Saylors in support of its motion to dismiss, and this affiant serves in the same capacity as an assistant secretary for *both* UPC and UPRR.

### e. As in *Anderson*, UPC and UPRR Share a Common Logo

Additionally, both UPC and UPRR appear to share the same logo:

 and 

While it is noted that the above logos are "Official UPRR Identifiers," they also are associated with identifying UPC and "are the foundation of the Union Pacific brand." http://www.uprr.com/aboutup/history/uplogo/logo12.shtml (Ex. E). UPC incorporated

---

[4] Richard K. Davidson (Chairman of UPC and UPRR), James R. Young (President and CEO of UPC and UPRR), Robert M. Knight, Jr. (Executive VP – Finance and CFO of UPC and UPRR), Charles R. Eisele (Sr. VP – Strategic Planning of UPC and UPRR), J. Michael Hemmer (Sr. VP – Law and General Counsel of UPC and UPRR), Barbara W. Achaefer (Sr. VP – Human Resources and Secretary of UPC and UPRR), Lynden L. Tennison (Sr. VP and CIO of UPC and UPRR), Bernard R. Gutschewski (VP – Taxes of UPC and VP and General Tax Counsel of UPRR), Richard J. Putz (VP and Controller of UPC and CAO and Controller of UPRR), Mary Sanders Jones (VP and Treasurer of UPC and Treasurer of UPRR). Only three officers – Mary E. McAuliffe, Dennis J. Duffy, and John J. Koraleski – do not serve as officers to both UPC and UPRR.

[5] Philip F. Anschutz, Richard K. Davidson, Erroll B. Davis, Jr., Thomas J. Donohue, Archie W. Dunham, Spencer F. Eccles, Judith Richards Hope, Michael W. McConnell, Steven R. Rogel, Ernesto Zedillo Ponce de Leon. UPC 2005 10-K, p. 80; UPRR 2005 10-K, p. 56.

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

Page 9 of 16

the Union Pacific shield and "Building America" slogan on the cover of its 2005 Annual Report to shareholders, thereby associating itself with the "official UPRR identifier" and further blurring the distinction, if any, between UPC and UPRR.  The "Building America" slogan also appears to be at the heart of the companies' marketing strategy.  In the "Building America" ad campaign, no distinction is drawn between UPC and UPRR, but rather reference is only made to Union Pacific and additional reference is made to the companies' joint website.  Though separate legal entities, UPC and UPRR have presented to its shareholders and the public at large a unified front and have wholly failed to distinguish the activities of one from the other.

    f.  **As in *Anderson*, UPC has a Substantial Interest in its Subsidiary's Operations**

As in *Anderson*, UPC has "a clear awareness and interest in its subsidiary's substantial operations in Arkansas" and beyond.  The companies' website describes the companies' contacts with Arkansas, in part, as follows:

> North Little Rock is the hub of UP's operations in Arkansas, where the railroad operates the $40 million Downing B. Jenks locomotive repair shop, the largest and most modern on the system. North Little Rock is also the site of the system's second largest freight car classification yard. In addition to Union Pacific's facilities in Little Rock, UP operates a $70 million state-of-the-art, 600-acre intermodal facility at Marion, 10 miles west of Memphis, and a classification yard at Pine Bluff.

http://www.uprr.com/aboutup/usguide/usa-ar.shtml (Ex. F).  Also, the companies' website explains that the Union Pacific has 1,344 miles of track and 2,863 employees in Arkansas.  Id.   Union Pacific's annual payroll in Arkansas is $159.6 million and it has

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

Page 10 of 16

made $103.6 million in purchases in the state of Arkansas. Id. Only seven of the other 22 states that UPC and UPRR operate in have more track miles than Arkansas. The companies' website also goes on to tout the importance and magnitude of the Jenks Shop Complex located in North Little Rock, Arkansas. There are more than 1,100 individuals employed at the Jenks Shop Complex and it is one of the largest railroad servicing facilities in the world. http://www.uprr.com/aboutup/history/jenks/shopcom.shtml (Ex. G). The skilled employees at the Jenks Shop Complex in Arkansas play a significant role in the operation of the companies' train fleet performing, among many other things, maintenance on the entire fleet of over 7,000 locomotives that pull trains throughout the western two-thirds of the United States. *See id.* As "one of America's leading transportation companies," UPC's presence "is especially significant in the state of Arkansas in the same way that Dassault Aviation's presence in Arkansas was "especially significant" and resulted in the exercise of personal jurisdiction in *Anderson*.

As of December 31, 2005 and 2004, UPRR had $782 million and $783 million, respectively, in working capital deficit balances related to UPC's management of UPRR's cash position. UPRR 2005 10-K, p. 18. UPRR advances excess cash to UPC as part of UPC's cash management activities, and pays dividends to UPC that typically approximates the dividends that UPC declares and pays to its shareholders. Id. Also, UPRR's acquisitions of Chicago and North Western Transportation Company and Southern Pacific Rail Corporation were funded by UPC. Id. These acquisitions were made possible through unsecured intercompany borrowings between UPC and UPRR. Id. at 18-19.

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

Page 11 of 16

Of significant importance is the fact that UPC provides UPRR with "various services, including strategic planning, legal, treasury, accounting, auditing, insurance, human resources, and corporate affairs." Id. at 19. These do not appear to be peripheral services, but rather key services relating to the continued operation of the two companies. Since UPRR is UPC's one reportable operating segment, it makes sense that UPC would provide guidance relating to the "strategic planning" of the two companies. With over 49,000 full time equivalent employees, many of whom live and work in Arkansas, UPC's ability to provide UPRR with human resource services is also of great significance to the continued operation of the two companies. This continued relationship between UPC and UPRR is made all the more possible because both UPC and UPRR maintain principal executive offices at the same address – 1400 Douglas Street, Omaha, NE 68179. *See* UPC 2005 10-K, p. 3; UPRR 2005 10-K, p. 4. They also both share the same telephone number at that address – (402) 544-5000. *See id.* This further highlights the synergistic and shared relationship that exists between UPC and UPRR.

As was the case in *Anderson*, in light of the jointly produced website, the similarities in names and logos, the apparent unified marketing strategy, the sharing of officers and directors, and the sharing of office space and telephone numbers among the many other shared activities it is readily apparent that UPC clearly intended to and continues to intend to reap the benefits of UPRR's significant presence in the state of Arkansas.

---

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

C.  **Union Pacific Corporation Should Reasonably Anticipate Being Haled Into Court In Arkansas**

UPC should reasonably anticipate being haled into court in Arkansas, and recognizes its potential liability in various states. Notable statements in UPC's 2005 10-K include:[6]

> With operations in 23 states, we employ a variety of assets in the management and operation of our rail business. These assets include real estate, track and track structure, equipment, and facilities.... We operate numerous facilities, including terminals for intermodal and other freight; rail yards for train-building, switching, storage-in-transit...and other activities; offices to administer and manage our operations; dispatch centers to direct traffic on our rail network; crew quarters to house train crews along our network ; and shops and other facilities for fueling, maintenance, and repair of locomotives and repair and maintenance of rail cars and other equipment.

Union Pacific Corporation 2005 10-K, p. 9.

> *We May Be Subject to Various Claims and Lawsuits That Could Result in Significant Expenditures* – The nature of our business exposes us to the potential for various claims and litigation related to...personal injury, <u>property damage</u>, <u>environmental liability</u>, and <u>other matters</u>. Any material changes to litigation trends or <u>a catastrophic rail accident involving property damage, personal injury, or environmental liability</u> could have a material adverse effect on our results of operations, financial condition, and liquidity.

Id. at 7 (underline added).

> *We Are Subject to Significant Environmental Laws and Regulations* – Our operations are subject to extensive federal, <u>state</u>, and local environmental laws and regulations

---

[6] "[A]ll references to 'UPC', 'Corporation', 'we', 'us', and 'our' shall mean Union Pacific Corporation and its subsidiaries..." *See supra* note 1.

---

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

> concerning, among other things,...<u>hazardous material...
> releases</u>.... We have been and may be subject to allegations
> or findings that we have violated, or are strictly liable
> under, these laws or regulations.

Id. (underline added).

UPC makes no attempts to exclude itself from these above referenced examples, and in fact specifically includes itself by reference. By claiming that UPC and its subsidiaries have operations in 23 states, UPC should legitimately expect to be haled into court in any one of those 23 states, particularly with respect to matters that arise out of those specific operations.

In addition to these few examples, UPC's relationship with UPRR is such that it seeks to reap the benefits of doing business within the state of Arkansas as discussed *supra*. As such, it would not violate traditional notions of fair play and substantial justice for this Court to assert personal jurisdiction over UPC in this action.

### D. OTHER FACTORS SUPPORT THE EXERCISE OF PERSONAL JURISDICTION

Arkansas would not be an inconvenient forum for UPC to litigate in. Arkansas is not that distant from Utah or Nebraska, and either way, as in *Anderson*, UPC has access to transportation for conveniently making the trip to Arkansas. Also, Arkansas contains one of the world's largest railroad servicing facilities and is surely visited frequently by officers and/or directors of UPC and UPRR. Given that UPC admittedly provides human resource services to UPRR, UPC surely has an interest in the employees who work at the Arkansas Jenks Shop Complex and even more importantly, the workers located at the Texarkana, Arkansas rail yard. Also, Arkansas has a substantial interest in the matter to

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

Page 14 of 16

be litigated since the accident in question occurred in Arkansas and the safety of UPC and UPRR's train operations affects the state's consumers, property owners, and workers who encounter these trains and the products they carry every day.

### III. CONCLUSION

UPC has purported to own, manage, and operate assets in the 23 states relating to the operation of UPC and its subsidiaries' rail business. As such, it is subject to the personal jurisdiction of this Court. Additionally, the symbiotic and synergistic relationship that exists between UPC and UPRR and the associated contacts with the state of Arkansas are such that it is fair and reasonable for this Court to assert personal jurisdiction over UPC. Therefore, Plaintiff respectfully requests that this Court deny Defendant UPC's 12(b)(2) Motion to Dismiss.

Respectfully Submitted,

/s/ R. Benjamin King

Brady Paddock
bpaddock@nixlawfirm.com
Arkansas Bar No. 93135

R. Benjamin King
Arkansas Bar No. 2005260
benking@nixlawfirm.com

NIX, PATTERSON & ROACH, L.L.P.
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
Phone: (903) 223-3999

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

Facsimile: (903) 223-8520

Matt Keil
mkeil@kglawfirm.com
Arkansas Bar No. 86099

John Goodson
jcgoodson@kglawfirm.com
Arkansas Bar No. 90018

Shorty Barrett
sbarrett@kglawfirm.com
Arkansas Bar No. 2006066

**KEIL & GOODSON**
611 Pecan
Texarkana, Arkansas 71854
Phone: (870) 772-4113
Facsimile: (870) 773-2967

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record in the above action who have agreed to service by electronic filing on this 5th day of September, 2006.

/s/ **R. Benjamin King**
**R. Benjamin King**

Plaintiff's Response to Union Pacific Corporation's
Memorandum in Support of its Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(2)

Page 16 of 16