IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **Nichole Y. Sartor** § | | |
| *Plaintiff,* § | | |
| § | | |
| vs. § | No. **06-4044** | |
| § | | |
| **Union Pacific Corporation,** § | | |
| **Union Pacific Railroad Company** § | | |
| *Defendants.* § | | |

**UNION PACIFIC RAILROAD CORPORATION'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b)(6)**

Plaintiff's Response to Union Pacific Corporation's (hereinafter referred to as "Union Pacific") Motion to Dismiss contorts and confounds Federal Railroad Safety Act ("FRSA") preemption principles. This reply deals with the confusion engendered thereby. *Easterwood*, *Shanklin*, and the Eighth Circuit's *Scottsbluff* decision are controlling and consistent: the FRSA preempts all common law claims "covered" by the federal regulations, and once a regulation is issued, all state tort law on the same subject matter is displaced. Plaintiff's claims, as pled, are founded upon matters covered by federal regulations promulgated pursuant to the FRSA as well as the HMTA. These claims are preempted.

**I.   DEFENDANT'S MOTION IS NOT PREMATURE**

Plaintiff claims that this Court should deny Union Pacific's Motion to Dismiss because Plaintiff doesn't know how or why the accident happened. Curiously, Plaintiff has not sought leave to amend her complaint following the June 28, 2006, disclosure by Union Pacific and production of approximately 1500 pages of documents, which included statements by the

crewmembers. Despite her assertion to the contrary, Plaintiff spends a number of paragraphs in her Complaint describing the accident and again details the accident in her Response.  Plaintiff alleges six separate causes of action in her Complaint, and even claims entitlement to punitive damages, based upon specifically alleged legal principles and now asserts that she has no knowledge as to the cause of the accident.  Has she made allegations that Union Pacific breached duties encompassed in federal **"*statutes, codes, rules, and/or regulations*"** without having any foundation? *See* Complaint, ¶ 22, ¶ 23 (emphasis added).

It appears, however, that Plaintiff does have some knowledge as to the cause of the accident: "In the instant case it is indisputable that Defendant ultimately caused this tragedy when it ran one of its trains into the back of another…." Response at 7.  If this is the cause of the accident, then clearly the yard limit speed restriction at 49 C.F.R. 218.35(b)(2), requiring a train to be prepared to "stop" within one half the range of vision, is squarely on point and preempts Plaintiff's claims.[2]  The sole reason for that regulation is to prevent the very occurrence alleged.

Importantly, Plaintiff offers no changes to her pleadings, nor does she request an opportunity to replead based upon the recently received documents.  Union Pacific asserts that the remedy, in the face of specifically cited regulations that cover the <u>actual</u> allegations contained in the Complaint, is either to dismiss with prejudice, or if the Court is so inclined, to dismiss the allegations without prejudice subject to repleading within a specific period of time.

## II.   PLAINTIFF CONVOLUTES THE PREEMPTION ANALYSIS

---

[2] Union Pacific notes and apologizes for the citation error in its Memorandum at p 19.  The correct cite is 49 C.F.R. § 218.35(b)(2), not 218(b)(2).

Union Pacific's preemption analysis is not, as described by Plaintiff at p. 3 of her Response, that "(1) railroads are subject to regulation, (2) the whole field is preempted, (3) Defendant is a railroad, and (4) Defendant therefore cannot be sued." This nonsensical rendering of Union Pacific's argument is nothing more than an attempt to obfuscate the real issue, which is whether or not the claims in Plaintiff's Complaint are substantially subsumed by the federal authority's regulations.

### A. Plaintiff misrepresents Congressional intent

In its Memorandum, Union Pacific made plain that FRSA preemption displaces state law only when a regulation covering the same subject matter is issued. (*See* Union Pacific's Memorandum, pp. 8-24). That Plaintiff misrepresents Union Pacific's argument so profoundly is no surprise based on her wholly inaccurate presentation of Congressional intent as reluctant, tentative, and exceedingly deferential to state law. The actual legislative history paints a different picture:

> With the exception of industrial or plant railroads, the railroad industry has very few local characteristics. Rather, in terms of its operations, it has a truly interstate character calling for a uniform body of regulations and enforcement . . . to subject a carrier to enforcement before a number of different state administrative and judicial systems in several areas of operation could well result in an undue burden on interstate of commerce.

1970 U.S. Code Cong. and Admin. News, 4110-4111 (emphasis added); *see Peters v. Union Pacific Railroad Company*, 80 F.3d 257, 261, fn. 2 (8th Cir. 1996).

Congress considered but rejected enforcement of federal railroad standards at the state level:

> Section 206 is one of the key sections of the bill. As originally considered by the Committee, this section allowed certifying states to adopt all federal standards and, except for those involving rolling stock and employee qualifications, enforce them at the state

**UNION PACIFIC RAILROAD CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b)(6)** - PAGE 3

> level.  Violations involving rolling stock and employee qualifications were reserved to the secretary for enforcement at the federal level.  <u>The Committee believes, however, that such a vital part of our interstate commerce as railroads should not be subject to this multiplicity of enforcement by various certifying states as well as the federal government.</u>

1970 U.S.C.C.A.N. 4104, at 4717 (emphasis added).

### B. The plain language of § 20106 mandates preemption of state law once a regulation covering the same subject matter is issued.

Where Congress' preemptive intent is made express, the task of statutory construction must "focus on the plain wording of the clause."  *Easterwood*, 507 U.S. at 664; *Burlington Northern Railroad v. State of Minnesota*, 882 F.2d 1349, 1352 (8th Cir. 1999).  Congress enacted the FRSA "to promote safety in every area of railroad operations and to reduce railroad related accidents and incidents," 49 U.S.C. § 20101, and granted to the Secretary of Transportation the authority to "prescribe regulations and issue orders for every area of railroad safety."  49 U.S.C. § 20103(a); *Shanklin*, 529 U.S. at 348.

Once a regulation substantially subsumes the subject matter of the state law claim, neither "reluctance" nor "considerable solicitude for state law" apply.  "The FRSA preemption provision . . . authorizes the court *only* to determine whether the regulation covers the subject matter . . ." CSX *Transportation, Inc. v. Williams*, 406 F.3d 667, 672 (D.C. Cir. 2005)(emphasis added).  The matter is either covered and preempted or it's not.[3]  In *Williams*, the panel, which included now Chief Justice John Roberts, examined the preemptive scope of the FRSA and noted "that the case for preemption is particularly strong where, as here, the State regulates in an area where there has

been a history of significant federal presence". 406 F.3d at 673 (citation omitted). *See also Burlington Northern R.R. v. State of Minn.*, 882 F.2d 1349, 1352 (8th Cir. 1989)(FRSA "on its face provides for broad preemption permitting state regulations of railroad safety in only two circumstances" – where FRA has not covered the subject matter and to address a local safety hazard). *See also Easterwood*, 507 U.S. at 664-65; *Rayner*, 873 F.2d 60,66 (4th Cir. 1989)(once the federal government acts, FRSA preemption applies)(cited in *Peters*, 80 F.3d at 262).

The *Easterwood* court's invocation of the "presumption against preemption" applied to its determination that 23 C.F.R. § 924, which merely "establishes the general terms of the bargain between the federal and state governments" concerning highway safety improvement programs, including those related to railroad crossings, did not cover the subject matter of the adequacy of crossing protection. *Id.* at 668. The Court's reluctance to find preemption where it is not warranted by § 20106's plain "covering" language, is clearly justified and wholly compatible with Union Pacific's argument. *Easterwood*, 507 U.S. at 664 ("preemption will not lie <u>unless</u> it is the clear and manifest purpose of Congress")(citations omitted)(emphasis added). The *Easterwood* mandate is unequivocal: preemption applies "only when the federal regulations substantially subsume the subject matter of the relevant state law." *Id.* at 664.[4]

Strangely, Plaintiff cites to *Bates v. Dow Agro Sciences, LLC*, 544 U.S. 431, 447 (2005), to support her argument that the FRSA has no preemptive force unless the railroad complies with the covering regulation. Actually, the fundamental difference between the FIFRA, at issue in

---

[3] The only exception, not at issue here, involves the savings clause for state law which addresses a "local safety or security hazard". § 20106.

*Bates,* and the FRSA at issue here, underscores the proposition that compliance is immaterial under the FRSA.  FIFRA's preemption clause states:

> "Such states shall not impose or continue in effect any requirements for labeling or packaging <u>in addition to or different from</u> those required under this subchapter."

7 U.S.C. § 136v(b)(emphasis added).

In *Bates*, Dow argued that despite inclusion of the phrase "in addition to or different from", <u>all</u> state law concerning labeling was preempted.  The Supreme Court's response is instructive:

> Conspicuously absent from the submissions by Dow . . . is any plausible interpretation of "in addition to or different from" that would give that phrase meaning.  Instead, they appear to be reading those words out of the statute, which would leave the following:  "Such state shall not impose or continue in effect any requirements for labeling and packaging".  This amputated version of Section 136(v)(b) would no doubt have clearly and succinctly commanded the preemption of <u>all</u> state law requirements concerning labeling.  That Congress added the remainder of the provision is evidence of its intent to draw a distinction between state labeling requirements that are preempted and those that are not.

544 U.S. at 448-49 (emphasis in original).  *See also Medtronic v. Lohr*, 518 U.S. 470, 495-96 (1996)(MDA preemption qualifier "different from, or in addition to", meant that the plaintiff could bring state law claims alleging federal violations). [5]

---

[4] FRSA preemption is not, as plaintiff implies a "paper tiger."  The 8th Circuit has recently determined that preemption under FRSA affords removal jurisdiction under the doctrine of complete preemption, a little used exception to the "well pleaded" complaint rule.  *Lundeen v. Canadian Pacific Ry. Co.*, 447 F.3d 606 (8th Cir. 2006).

[5] Similarly, the HMTA preemption provision contains a savings clause for state law that is not inconsistent with federal.  Although this clause does not apply to transportation by rail, *see, infra*, pp. 12-14, it allows state law claims even where a regulation covers the subject matter, so long as that claim does not seek to impose an inconsistent standard.  The FRSA, which applies to railroad transportation of hazardous materials, in contrast, contains no such provision.

In contrast, FRSA preemption language mirrors the "amputated version" of FIFRA proposed by Dow. The FRSA contains no such "remainder". There is no savings clause written into the FRSA which would allow for state law claims that are "in addition to or different from" federal regulations. Thus, as *Bates* dictates, in the absence of this important qualifier, "<u>all</u> state law requirements concerning [the covered subject matter]" are preempted. Plaintiff's effort to rewrite Congress' fully realized express preemption clause must fail. If Congress had intended to preserve such claims, it certainly knew how to write such intention into the legislation.

> C. **The Court's task is not "to try to avoid forfeitures" but rather to determine whether the Plaintiff's claims are covered by the regulations.**

Union Pacific and Plaintiff agree that no private right of action exists under the FRSA and that preemption in this case would require the dismissal of Plaintiff's claims. Plaintiff's characterization of such result as designed only to "immunize Defendant from liability for crashing its trains into one another" is based on emotion rather than legal precedent. The dissent in *Shanklin* notes the unsparing consequences of a preemption finding:

> "The upshot of the Court's decision is that state negligence law is displaced with no substantive federal standard of conduct to fill the void."

*Shanklin,* 529 U.S. at 360.  (J. Ginsberg dissenting.)

This result is necessary to effectuate Congress' paramount purpose – to ensure that standards regarding railroad safety are uniform "to the extent practicable." Thus, Ms. Shanklin was left without redress for her husband's death under state law for the railroad's alleged failure to install adequate warning devices. *Id.* Likewise, residents of the City of Scottsbluff, Nebraska, following a derailment and leakage of hazardous chemicals, were left without redress when the

**UNION PACIFIC RAILROAD CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b)(6)**  - PAGE 7

Eighth Circuit ruled that the FRSA preempted their claims, affirming the dismissal of the case in its entirety. *In Re Derailment Cases*, 416 F.3d 787 (8th Cir. 2005) (hereinafter *Scottsbluff*). *See e.g., Fifth Third Bank ex rel. Trust Officer v. CSX Corp.*, 415 F.3d 741 (7th Cir. 2005)(no recovery for death of child and severe injuries to mother based on preempted state tort law regarding railroad's alleged failure to provide adequate warning devices); *Cearley v. General, American Transp. Corp.*, 186 F.3d 887 (8th Cir. 1999)(no recovery on widow's wrongful death claim based on inadequate tank car platform railing since preempted by FRSA); *Mehl v. Canadian Pacific Railway, Limited*, 417 F. Supp. 2d 1104 (D.N.D. 2006)(recovery arising out of anhydrous ammonia from tank car preempted); *Ouellette v. Union Tank Car Co.*, 902 F. Supp. 5 (D. Mass. 1995)(leg injury recovery based on defective tank car handrail preempted).[6] Even in the context of "complete preemption," the question of whether preemption exists must be separate from whether a cause of action exists to provide compensation to aggrieved plaintiffs. *See Lundeen v. Canadian Pacific Railway Co.*, 447 F.3d 606, 613 (8th Cir. 206)(finding negligent inspection claims completely preempted by FRSA; there is no indication the FRA meant to leave open a state law cause of action).

      **D.**    **FRSA case law, honoring the plain language of § 20106, renders non-compliance immaterial.**

---

[6] *Ouellette* has not been overruled. What plaintiff fails to explain in her effort to undermine the holding is that *Ouelette* preemption is based largely on the Safety Appliance Act, 49 U.S.C. § 20301, *et. seq.,* "which shape[s] the preemption determination here." 902 F.Supp. at 11. The Safety Appliance Act (formerly 45 U.S.C. § 1, *et. seq.*) "occupies the field" of safety appliances on railcars. *Southern Ry. v. Railroad Commission of Indiana*, 236 U.S. 439 (1914).

**UNION PACIFIC RAILROAD CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b)(6)  - PAGE 8**

Plaintiff's analysis of U.S. Supreme Court precedent is wrong. Plaintiff expends much effort, to no avail, attempting to re-formulate the *Easterwood* and *Shanklin* opinions so that compliance with the regulations is a prerequisite to preemption.[7] *Shanklin* dictates the contrary:

> It is this displacement of state law concerning the device's adequacy and not the state's or the FHWA's adherence to the standards set out in §§ 646.214(b)(3)(4) or to the requirements of the MUTCD, that preempts state tort actions. Whether the state should have originally installed different or additional devices or whether conditions at the crossing have since changed such that automatic gates and flashing lights would be appropriate, is immaterial to the preemption question.
>
> What states cannot do – once they have installed federally funded devices at a particular crossing – is hold the railroad responsible for the adequacy of those devices.

529 U.S. at 357-58.

Since the regulations regarding the installation of warning devices at crossings <u>apply solely to those installed with federal funds</u>,[8] state law regarding the adequacy of crossing protection is neither covered nor preempted by those regulations <u>unless</u> the devices were installed with federal funds. If federal funds are used to install devices, there can be <u>no</u> inquiry into whether those devices meet the requirements of § 646.214(b)(3) or (4) (which under certain

---

[7]Plaintiff reformulates *Easterwood's* train speed preemption insisting that its holding requires compliance with the regulation as a "pre-condition" to preemption. The issue of compliance with the speed regulation was <u>not</u> before the Court. The Court merely referenced that there was no dispute that the train was traveling below the speeds set forth in the regulation. *Easterwood*, 507 U.S. at 673. The Court never concluded, as plaintiff urges, that "under the FRSA, only common law claims that seek to oppose standards 'additional' to and 'incompatible with' federal requirements will be preempted". Response, p. 9. This is a grave misstatement of the l aw. The question of whether state law is or is not compatible with federal law arises under FRSA, as indicated in *Easterwood*, only in the context of the "local hazard" savings clause, allowing for state law "to remain in force <u>only</u> when necessary to eliminate or reduce an essentially local safety hazard <u>and when not incompatible with any federal law</u> . . ." (emphasis added). This savings clause is not at issue in this lawsuit.

[8] There is no regulation covering the adequacy of crossing protection which is <u>not</u> funded by the federal government. Therefore, state tort law is not displaced when protective devices are funded by entities other than the federal government, as was the case in *Easterwood*.

**UNION PACIFIC RAILROAD CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b)(6)  - PAGE 9**

circumstances, require the installation of gates and lights) or are otherwise adequate. The *Shanklin* Court rejected the compliance argument as "immaterial," reasoning that the "displacement of state law" concerning the device's adequacy, and not adherence to federal regulatory standards, effectuates the preemption of state tort actions.[9] *Shanklin* 529 U.S. at 357-58. *See also, Fifth Third Bank v. CSX Corp. ex rel,* 415 F.3d at 746 (the *Shanklin* court made it clear that whether the devices installed actually meet the standard set forth in 646.214(b)(3) and (4) is immaterial to the preemption analysis).

Plaintiff views federal funding as a compliance issue. It is not – the federal regulation which <u>covers</u> state tort law relative to adequacy of crossing protection deals <u>only</u> with federally funded devices (See § 646.208 entitled "Funding"). The lack of federal funding merely makes §646.214(b)(3) and (4) inapplicable. *Shanklin*, 529 U.S. at 353 (In *Easterwood*, "we held that §§646.214(b)(3) and (4) <u>were not applicable</u>" because devices were not federally funded)(emphasis added); *Bock v. St. Louis S.W. Ry. Co.,* 181 F.3d 920, 922 (9th Cir. 1999)("federal regulations are applicable <u>if</u> federal funds have been expended for the installation of warning devices")(emphasis added).

Although Plaintiff would have it otherwise, *Scottsbluff* is controlling. The *Scottsbluff* decision supports Union Pacific's argument that once preemption applies, compliance with the

---

[9] At page 17 of her Response, Plaintiff cites to a number of cases to support her position that she is allowed to proceed to trial for violations of the FRSA and the FRA. However, *Michael v. Norfolk, Kiemele, Stone, Zook, and Stanton* are all pre-*Shanklin*. Moreover, *Kiemele*'s holding that federally funded crossbucks that lost their reflectivity were no longer preempted was necessarily overruled by *Shanklin*. *See also Bock v. St. Louis Southwestern Ry. Co.*, 191 F.3d 920 (8th Cir. 1999)("preemption is not a spigot that is turned on and off" due to later events).

**UNION PACIFIC RAILROAD CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b)(6)** - PAGE 10

regulation is not an issue—even if a fact issue exists.[10] In *Scottsbluff*, the Eighth Circuit was specifically faced with the argument that summary judgment was inappropriate because the railroad had not complied with the regulation. Thus, compliance, as argued, was an issue. Nevertheless, in the *Scottsbluff* opinion, the Eighth Circuit specifically held that "negligent inspection" claims were preempted. The term "negligent" contemplates that a party failed to do something or was not in compliance with the governing standard. Because the Eight Circuit found that "Plaintiff's negligent inspection claims are preempted by the FRA's regulations," it affirmed the dismissal of the Plaintiff's claims by the district court without any examination of the adequacy of the inspection conducted. *Scottsbluff*, 416 F.3d at 794, 796. The Court did not remand for a fact finding determination as to whether the inspection was properly performed.

More importantly, the Eighth Circuit's adoption of the language in *CSX Trans., Inc. v. Williams*, 406 F.3d 667, 672 (D.C. Cir. 2005), clearly shows the Court's intent to focus on coverage as the triggering event rather than on compliance. As stated by the Eighth Circuit in W*illiams*, "'The FRSA preemption provision . . . authorizes the court *only* to determine whether the regulation covers the subject matter, leaving it to [the federal agency] to gauge the efficacy of the . . . measures based on the agency's expertise.'" *Scottsbluff*, 416 F.3d at 794 (quoting *Williams*, 406 F.3d at 672).

Such was the Eighth Circuit's analysis in *Cearley v. General American Transportation Co.*, 186 F.3d 887 (8th Cir. 1999). Mrs. Cearley alleged that her husband's death was caused by

---

[10] Contrary to Plaintiffs' assertion that *Scottsbluff* did not involve "evidence of the railroad's failure to comply with the federal inspection standards" (Response at p. 24), the heart of the appellee's argument in *Scottsbluff* was that the

the railroad's failure to provide a tank car platform railing of a sufficient height to have prevented his fall.  The *Cearley* court noted the FRSA express preemption language, and specifically stated that, "we are confronted with the issue of whether or not the Secretary of Transportation has adopted a rule, regulation, order, or standard 'covering the subject matter' of appellees' claims."  *Cearley*, 186 F.3d at 891.  The *Cearley* court then undertook an examination of § 231.21, which covered the subject matter of tank car platforms and railings thereon. Notwithstanding the absence, within the specific regulation, of any height requirement whatsoever, the *Cearley* court found that the regulation "substantially subsume[d] the subject matter of state tort law" and that "[t]he FRA regulation therefore precludes additional state regulation of the same subject matter."  *Id*. at 892.

### III.  FEDERAL REGULATIONS COVER EVERY CLAIM HEREIN

As stated above, Union Pacific recognizes that not every regulation will preclude every state law claim.  However, in her Response, and indeed in the sole document at issue--the Complaint, Plaintiff fails to assert a single cause of action or scenario for which the regulations cited by Union Pacific do not already create a standard, duty, or measure of how to evaluate Union Pacific's purported conduct.

> **A. There is no confusion about the HMTA's enforcement through the FRSA's preemption clause and the HMTA regulations cover the subject matter of Plaintiff's claims alleging negligence in the storage, handling, and transportation of hazardous substances.**

---

railroad failed to properly inspect the rail-cars. Appellee continually asserted that a fact issue existed as to whether the inspection was done properly.

Plaintiff concedes that the Sixth Circuit has concluded that the FRSA preemption analysis applies to the HMTA "as it relates to the transportation of hazardous materials by rail." (Response, pages 29-30).  *See CSX Transp., Inc. v. Pub. Util. Com'n of Ohio*, 910 F.2d 497, 501 (6th Cir. 1990).  Accordingly, there should be no "confusion" as to the application of the HMTA through the FRSA's preemption provision: the HMTA savings clause for state law "not inconsistent" with the federal regulations, does not apply to matters involving transportation of hazardous materials by rail—the FRSA's provision applies.  Plaintiff devotes four pages of overwrought rhetoric to what she considers to be Union Pacific's gross error in applying FRSA preemption to regulations issued pursuant to the HMTA.  While conceding that the HMTA relates to the transportation of hazardous materials by rail, she argues that since the tank car at issue was stopped on Union Pacific track, it was not actually transporting hazardous materials – hence HMTA's saving clause applies.  Does this mean that if a train, loaded with hazardous material, stops for a red block that it is not transporting hazardous materials by rail until the signal turns green?  This assertion is absurd.  The district court's ruling, affirmed by the 6th Circuit, in *Public Utilities Com'n of Ohio,* provides guidance:

> The Court agrees that it may have been logical or even desirable for Congress to have provided a meaningful state role in regulating the transportation of hazardous materials by rail.  However, the issue before the Court is not the wisdom of the Congressional enactments, but what Congress intended.  Based upon a considered analysis of the statutory language and the legislative history, the Court is satisfied that Congress intended that the strict preemption provisions of the FRSA apply to hazardous materials regulations <u>applicable to railroads</u> adopted under the HMTA.  This means that the only role of the states in the regulation of the transportation of hazardous materials by rail is that narrow role permitted by the preemption provision of the FRSA.

*CSX Transp., Inc. v. Public Utilities Com'n of Ohio*, 701 F.Supp. 608 (S.D. Ohio 1988), *aff'd* 901 F.2d 497 (6th Cir. 1990)(emphasis added).  *See also Atchison Topeka & Santa Fe Railway Co. v. Ill. Commerce Commission*, 453 F.Supp. 920, 924 (N.D. Ill. 1977)(FRSA preemption applies to any regulations issued by the Secretary, not just those issued pursuant to FRSA; "any more narrow interpretation would frustrate its stated purpose of establishing uniform national standards"); *Missouri Pacific Railroad Co. v. Railroad Commission of Texas*, 671 F.Supp. 466, 471 (W.D. Tex. 1987), *aff'd* 850 F.2d 264 (5th Cir. 1988)(FRSA preemption refers to acts by "the Secretary;" thus, a regulation <u>affecting railroad safety</u> promulgated pursuant to the HMTA takes FRSA's preemptive effect).

The import of *Public Utilities Com'n of Ohio* is that <u>any</u> regulation affecting railroad safety, specifically those issued by the Secretary pursuant to the HMTA, is subject to the preemptive clause of the FRSA.  *See also CSX Transportation, Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005)(enjoining state regulation covering same subject matter as HMTA regulations based on FRSA preemption).  It matters not that the train or railcar is moving or stationary.  The FRSA is replete with railroad safety regulations that apply to stationary railcars, for instance, those at issue in *Scottsbluff*.

Because Plaintiff has failed to argue that these regulations <u>do not cover</u> her allegations, Plaintiff's claims regarding hazardous materials are preempted and should be dismissed.  (*See* Memorandum, pp. 14-17).

### B. Plaintiff's fatigue claims are preempted.

Plaintiff's admittedly vague "fatigue claims" reveals that she can offer no allegation to circumvent the requirements of the "prophylactic measures regarding mandatory rest periods," (Response, p. 31), provided in the Hours of Service Act. The Hours of Service Act, 49 U.S.C. § 21101, *et seq.*, was enacted in 1907. Its purpose is to prevent the dangers which must necessarily arise to the employee and to the public from the excessive mental and physical strain, which usually results from remaining too long at an exacting task. *Chicago & A. R. Co. v. U.S.*, 247 U.S. 107 (1918); *Atchison, T. & S.F. Ry. Co. v. U.S.*, 244 U.S. 336 (1917). It predates the FRSA and has been interpreted to "occupy the field" with respect to hours worked by employees and the prevention of railroad accidents due to fatigue. *See Northern Pacific Ry. Co. v. State of Washington* 222 U. S. 370 (1912). Thus, whether or not a specific regulation exists (it does – *see* Memorandum, pp. 18-19) regarding the prevention of crew fatigue, any state law recovery is preempted.

### C. The regulations absolutely cover the failure of this train to stop in time to avoid this yard collision.

If Plaintiff will concede that she will assert no breach of duty, attempt discovery thereon, or seek any factual inference regarding "engineer training and certification," "design of railcars," "inspection of railcars," "marking devices for rear end train cars," "brake system safety," "end of train telemetry devices," and "installation, inspection, maintenance, and repair of signal and train control systems, devices, and appliances," as a potential cause of this accident, then Union Pacific would agree with Plaintiff's assertion that "these regulations have [nothing] to do with failing to avoid a collision with a large, stationary object on the tracks." Response at 32.

Otherwise, each of the cited regulations provide the requisite standard for their respective subject matters and absolutely "subsume" state law related to those matters. What regulation, then, does apply to a failure to stop, within yard limits, for a "large stationary object on the track?"

49 C.F.R. § 218.35(b)(2) is a perfect fit. Plaintiff attempts to assert the applicability of the "specific individual hazard" exception to the preemptive effect of 49 C.F.R. 213.9, which governs train speed in general. Since § 213.9 is not at issue here, the "specific individual hazard" exception has no application. In fact, § 218.35(b)(2) contemplates the very individual hazard at issue in this lawsuit. A more perfect fit simply does not exist. Section 218.35(b)(2) covers not only speed, but also contains an express stoppage requirement to avoid any hazard—general or specific. Indeed, in a rail yard, the common obstacle for which a train crew would need to be able to stop, would be a forward train. Plaintiff asserts that the "duty to slow down or stop to avoid an actual object or person on the tracks must not be confused with an alleged duty generally to proceed slower than the speed limit in order to avoid *the mere likelihood* of hazards such as people or objects." There is no confusion. The § 218.35(b)(2) duty to "move prepared to stop" does, unequivocally encompass and subsume any common law duty to avoid a collision with "an actual object." Plaintiff's assertion that the "railroad *negligently failed to stop to avoid the specific, individual hazard* that actually existed on the track: a stationary tank car that the engineer 'saw or should have seen,'" (Response, p. 35) is absolutely covered and subsumed by the regulation which states that "Trains and engines . . . within yard limits must move *prepared to stop within one half the range of vision* but not exceeding 20 m.p.h." Accordingly, Plaintiff's resort to the "specific individual hazard" exception to avoid preemption is futile.

  **D. The comprehensive and exclusive FRA enforcement and penalty provisions are evidence of preemptive intent.**

 Plaintiff relies on a Minnesota state court's FRSA interpretation (rather than district court precedent within the Eighth Circuit) and on the Atomic Energy Act to argue that the FRA enforcement scheme is of no consequence to the FRSA preemption analysis. The principal underlying FRSA preemption is the existence of a national standard for railroad safety, and the preemptive scope of the Act reflects the importance of the federal interest at stake. *See,* 49 U.S.C. 20106 "National Uniformity of Regulations". The purpose of the Atomic Energy Act is *not* uniformity, but rather to encourage private development of nuclear energy for peaceful purposes. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 257 (1984)(*citing* 42 U.S.C. § 2013(d)).

 If the preeminent federal interest undergirding the FRSA is national uniformity of regulation concerning rail safety, then it is no stretch to suggest that standards of compliance should be likewise uniform. To that end, the FRA regulations create a "national railroad safety program" (49 C.F.R. 212.101(b)(1)), which is to be "carried out in part through the issuance of mandatory Federal safety regulations and through inspection efforts designed to monitor compliance with those regulations", (*id.*) as well as "through routine inspections, accident investigations, formal and informal educational efforts, complaint investigations, safety assessments, special inquiries, regulatory development, research and similar initiatives" (§212.101(2)). Part 212 clearly charges FRA inspectors with policy compliance. They are to determine the extent to which railroads have fulfilled their regulatory obligations, and in so doing, ensure that regulations are uniformly interpreted, applied and enforced nationwide.

Plaintiff states that this comprehensive regulatory system is "not even mention[ed]" or "made reference to by the *Scottsbluff* Court". Plaintiff needs to read more closely. The regulations promulgated pursuant to the Secretary's enforcement authority are in fact cited in *Scottsbluff* which confirmed that the regulations at 212.101 "establish a national railroad safety program intended to promote safety in all areas of railroad operation". *Scottsbluff*, 416 F.3d at 793. Citing sections 212.101(b)(1) and 212.213, the *Scottsbluff* Court iterated that "Federal and State inspectors determine the extent to which the railroads . . . have fulfilled their obligations", that "inspectors visit rail yards to ensure compliance with the regulations", and that FRA can impose penalties for violations. It is this regulatory framework, in combination with the particular regulations which relate to train inspections, to which the *Scottsbluff* Court referred when it concluded that "beauracratic micromanagement is not required to subsume a subject matter". *Scottsbluff*, 416 F.3d at 793-94. So, the "national safety program" providing for compliance enforcement was, contrary to plaintiff's representation, very much in the contemplation of the *Scottsbluff* Court. It is not, as represented by plaintiff, merely the existence of a system of fines and penalties that preempts common law, but rather the expression of preeminent federal interest in nationally uniform rail safety standards, the promulgation of a regulation that covers a particular rail safety subject matter, and the creation of a national FRA safety program to ensure compliance with the Secretary's regulations.

### IV.   CONCLUSION

In her complaint, Plaintiff claims that an "overworked" and "fatigued" Union Pacific employee "barreled into" the Texarkana railyard and collided with a stationary railcar that "contained highly flammable propylene, and extremely dangerous and hazardous material,"

which "subsequently ignited" causing damage to the surrounding property. The matters asserted in her Complaint, however, are preempted because they are covered by the Secretary's regulations concerning railroad safety and Congress has not seen fit (as it has with the ADA, FIFRA and HMTA to name a few) to save state law causes of action that do not conflict with the issued regulations. Plaintiff was free to amend her pleadings to allege, even in the alternative, other claims that might not be covered by a federal regulation. Plaintiff chose not to do so. Her claims are therefore preempted. Based on the foregoing, Union Pacific Corporation respectfully requests that this Court grant its 12(b)(6) Motion to Dismiss.

                        Respectfully submitted,

                        /s/ Sean F. Rommel
                        George L. McWilliams
                        Arkansas Bar No. 68078
                        Sean F. Rommel
                        Arkansas Bar No. 94158
                        Leisa B. Pearlman
                        Arkansas Bar No. 92070
                        Jack T. Patterson II
                        Arkansas Bar No. 95012
                        **PATTON, ROBERTS,**
                        **McWILLIAMS & CAPSHAW, L.L.P.**
                        2900 St. Michael Drive, Suite 400
                        Post Office Box 6128
                        Texarkana, Texas  75505-6128
                        Telephone:  (903) 334-7000
                        Facsimile:   (903) 334-7007

                        **ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record in the above action who have agreed to service by electronic filing on this 20th day of September, 2006.


                                                                       /s/ Sean F. Rommel
                                                                      Sean F. Rommel