**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **NICHOLE Y. SARTOR** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **No. 4:06-cv-4044** |
| | § | |
| **UNION PACIFIC CORPORATION,** | § | |
| **UNION PACIFIC RAILROAD** | § | |
| **COMPANY** | § | |
| *Defendants.* | § | |

**UNION PACIFIC CORPORATION'S REPLY TO PLAINTIFF'S RESPONSE TO**
**UNION PACIFIC CORPORATION'S MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(b)(2)**

COMES NOW Defendant Union Pacific Corporation and files its Reply to
Plaintiff's Response to Union Pacific Corporation's Motion to Dismiss pursuant to Fed.
R. Civ. P. 12(b)(2), asking this Court to dismiss the above-entitled and numbered cause
of action as it relates to Union Pacific Corporation on the ground that this Honorable
Court lacks personal jurisdiction over this defendant. In support of its reply, Union
Pacific Corporation would show the following:

**I.     UNION PACIFIC CORPORATION DOES NOT OPERATE IN THE**
**STATE OF ARKANSAS**

Contrary to Plaintiff's baseless assertion, Union Pacific Corporation does not have
sufficient minimum contacts with the state of Arkansas to be subjected to the personal
jurisdiction of this Court. Union Pacific Corporation has shown through the affidavit of
C.W. Saylors that it is not, and never has been, licensed to do business in the state of
Arkansas. Union Pacific Corporation does not do business as Union Pacific Railroad
Company in the State of Arkansas. It does not operate, repair, maintain, or inspect

railcars in the state of Arkansas.  Union Pacific Corporation has no contacts with the state of Arkansas that might in any way be characterized as continuous or substantial business activities.  Union Pacific Corporation has no agent for service of process in the state of Arkansas. (*See* "Exhibit A," which is a true and correct copy of the Affidavit of C.W. Saylors).

In her response, Plaintiff repeatedly states that Mr. Saylors' affidavit contradicts Union Pacific Railroad Corporation's representations in its Form 10-K, which it submitted to the United States Securities and Exchange Commission for the fiscal year ending December 31, 2005.  On page four of her brief, Plaintiff "quotes" a section of Union Pacific Corporation's Form 10-K.  She includes in this "quote" brackets referring to "Union Pacific Corporation and its subsidiaries," incorrectly implying that Union Pacific Corporation and its subsidiary, Union Pacific Railroad Company, are one in the same or that they both conduct business in the State of Arkansas.  Notably, Union Pacific Corporation's Form 10-K states as follows:

> For purposes of this report, unless the context otherwise requires, all references herein to 'UPC,' 'Corporation,' 'we,' 'us,' and 'our' shall mean Union Pacific Corporation and its subsidiaries, including Union Pacific Railroad company, **which it separately refers to as 'UPRR' or the 'Railroad.'**

(*See* "Exhibit B," which is Union Pacific Corporation's Form 10-K, pg. 3-4).  The report goes to state that "**[t]he Railroad operates** on 32,426 main line and branch line route miles in 23 states in the western two-thirds of the United States. *Id.*  Despite Plaintiff's confusion, there is nothing in Union Pacific Corporation's Form 10-K that contradicts the representations made by Mr. Saylor in his affidavit. Both documents show that Union Pacific Railroad Company and Union Pacific Corporation are two completely different

entities.   Moreover, both documents show that it is Union Pacific Railroad Company, and not Union Pacific Corporation, that <u>operates</u> within the state of Arkansas.  Based on this evidence, Union Pacific Corporation does not have sufficient contacts with the state of Arkansas to allow this Court to have jurisdiction over it.

**II.      UNION PACIFIC CORPORATION'S RELATIONSHIP WITH UNION PACIFIC RAILROAD COMPANY DOES NOT SUBJECT THE CORPORATION TO THE JURISDICTION OF THIS COURT.**

Plaintiff incorrectly argues that as a result of Union Pacific Railroad Company's activities in the state of Arkansas, this Court should assert jurisdiction over its parent company, Union Pacific Corporation. In support of its argument, Plaintiff points to *Anderson v. Dassault Aviation*, 361 F.3d 449 (8th Cir.2004), which was a products liability action brought by a Beverly Anderson, a Michigan resident, to recover for injuries she received while working as a flight attendant on a Dassault Falcon business jet owned by her employer, Amway Corporation. The jet was manufactured in France by Dassault Aviation, a French corporation. Business jets manufactured by Dassault Aviation, which accounted for the majority of the company's revenue, were sold under the trade name Falcon, and were exclusively sold and leased in the western hemisphere by Dassault Falcon Jet Corporation, a wholly owned subsidiary of Dassault Aviation. Dassault Falcon Jet Corporation bought the jet on which Ms. Anderson was injured from Dassault Aviation in France, and then flew the jet to Little Rock, Arkansas, where it completed the jet, then sold and delivered it to Amway.

Unlike the case at bar, Dassault Aviation, as the parent company, had substantial contacts with the state of Arkansas, and it clearly intended to reap the benefits of Dassault Falcon Jet's substantial presence in the state of Arkansas. In so holding, the Court found,

among other things, that the majority of jets sold worldwide by Dassault Aviation flew in and out of Arkansas; Dassault's largest production site was in Little Rock, Arkansas; and Dassault Aviation stated in its own annual report that its "presence" in the United States had been especially significant in the state of Arkansas. *Id.* at 452-453.  In addition to these findings, the Court went on to state as follows:

> They [Dassault Aviation and Dassault Falcon Jet] also jointly put together a publication entitled "Falcon Operator Directory," which lists seventeen Dassault jets owned and operated by persons or companies in Arkansas. The directory also gives contact information for a "field service representative" in Little Rock who provides services and information to Falcon operators based in Arkansas, an "authorized service center" for Falcon jets in Little Rock, and a designated salesperson for potential Arkansas customers. The two companies also jointly publish and disseminate publications entitled "Worldwide Customer Service" and "Falcon Operator Services Guide," both of which provide contact information for a representative in Arkansas, and a customer service newsletter entitled "Update," which includes Arkansas-related Falcon news.

(*Id*. at 454).   Based on these and other significant contacts with the state of Arkansas, the Court concluded that Dassault Aviation had availed it self of Arkansas laws and protections.[1]

While Union Pacific Corporation concedes that "circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under it long arm statutes,"[2] the facts in the case at bar are far more similar to those found in *Epps v. Stewart Info. Servs.*

---

[1] While the *Anderson* Court found that a plaintiff does not have to "pierce the corporate veil" by showing that a parent company's subsidiary is simply its alter ego, the circumstances of each case must be examined to determine whether a corporation through the activities  of another corporation has subjected itself to the court's jurisdiction. *Anderson v. Dassault Aviation*, 361 F.3d 449, 452 (8th Cir.2004).

[2] *Anderson v. Dassault*, 361 F.3d at 449.

*Corp.* than to those found in *Anderson*.  In *Epps*, Plaintiffs brought a cause of action alleging violations of the Real Estate Settlement Procedures Act against Stewart Information Services Corporation ("SISCO"), a nonresident holding company that owned stock in various companies including Stewart Title and Guaranty ("Stewart Guaranty"), a wholly-owned subsidiary of SISCO, and Stewart Title Company of Arkansas, Inc. ("Stewart Title"), a wholly-owned subsidiary of Stewart Guaranty. *Epps v. Stewart Info. Servs. Corp,* 327 F.3d 642 (8th Cir.2003).

Defendant filed a Motion to Dismiss for Lack of Jurisdiction.  The United States District Court for the Eastern District of Arkansas granted defendant's motion despite the existence of the following evidence: (1) SISCO's 2000 SEC 10-K indicated that Stewart Guaranty's debts and assets were considered SISCO's debts and assets; (2) the SISCO and its subsidiary company shared officers; and (3) SISCO and its subsidiary company shared a variation of the same name. *Id*. at 646.[3]  Plaintiff appealed. The Eighth Circuit Court of Appeals affirmed the district court's ruling and, in so doing, held, among other things, that SISCO's ownership of an in-state subsidiary was too distant and limited a contact with Arkansas to justify subjecting the company to the exercise of personal jurisdiction.  *Id.* at 650.  As evidenced below, the same holds true  in the instant case.

A.  **The UPRR Website Does Not Bind Union Pacific Corporation and the Union Pacific Railroad Company for purposes of establishing this Court's jurisdiction over Union Pacific Corporation.**

Pointing to *Anderson*, Plaintiff argues that because Union Pacific Corporation and Union Pacific Railroad Company allegedly share a common website (i.e.,

---

[3] Some of these factual circumstances are present in the pending litigation. When this Court considers the *Epps'* decision in conjunction with the additional meritorious arguments below, it must find that Union Pacific Corporation is not subject to its jurisdiction.

www.UPRR.com),[4] that Union Pacific Corporation is bound to Union Pacific Railroad

Company, and thus, "clearly intended to and continues to reap the benefits of UPRR's

significant presence in the state of Arkansas." *See* Plaintiff's Memorandum at pg. 12.

Plaintiff contends that the *Anderson* Court used the common website as "evidence" that

the two companies were bound to one another. Specifically, the Court focused on the

following information relating to Dassault's website:

> The companies' website explains the role of the Little Rock completion
> center, stating that 'Falcons are manufactured in France, then flown in
> 'green' condition to the completion center where optional avionics and a
> custom interior are installed, and the exterior painted.' Jets sold to
> customers by both Dassault Aviation and Dassault Falcon Jet are flown in
> and out of the Little Rock completion center. Dassault Aviation itself paid
> over $126 million to Dassault Falcon Jet in the seven years preceding the
> filing of this action for completions done in Little Rock to Falcon jets that
> Dassault Aviation then sold to other parties. The companies indicate their
> pride in the Arkansas facility and its importance to their success by noting
> on their website that the Little Rock completion center is 'one of the best-
> equipped and most efficient facilities anywhere-the envy of the
> completion industry-another testament to the Dassault Falcon passion.'

(*See Anderson v. Dassault*, 361 F.3d at 453).

As noted above, the *Anderson* Court considered the <u>information contained on the</u>

<u>website</u>, and not the fact that they shared a website address, as evidence of the two

entities being bound to one another for jurisdictional purposes. In a failed attempt to

liken the *Anderson* case to the pending litigation, Plaintiff states that "[o]ne of the most

telling aspects of the synergistic relationship between UPC and UPRR is that both

companies use common words – 'Union Pacific' in their name." She goes on to state that

"[t]hroughout its website, UPC and UPRR make very little, if any, effort to distinguish

the two entities." *See* Plaintiff's Memorandum at pg. 8. Plaintiff fails to inform the

---

[4] Union Pacific Corporation's website address is <u>www.up.com</u>.

Court, however, that in the first sentence of the website's reference page entitled "Union Pacific Railroad in the USA," it states "Union Pacific Railroad is an operating subsidiary of Union Pacific Corporation."  *See* "Exhibit C."

Furthermore, under the website's "History and Photos" section, the Railroad and the Corporation are specifically defined as separate entities. The first paragraph of that section states as follows:

> As Union Pacific as a railroad grew, so also did its non-rail business.  In 1969, Union Pacific formed a full-fledged corporation.  Union Pacific Corporation became a new parent organization to its subsidiaries, the Union Pacific Railroad, and its other non-railroad operating companies.

*See* "Exhibit D."   The distinction is again made under the Company Overview/Union Pacific Corporation section of the website wherein it states, "Union Pacific Railroad is an operating subsidiary of Union Pacific Corporation.  It is the largest railroad in America operating in the western two-thirds of the United States.  **The Railroad** serves 23 states…." *See* "Exhibit E."

Although Plaintiff would like the Court to believe that the UPRR website sets forth a "synergistic relationship" between Union Pacific Corporation and Union Pacific Railroad Company, when the information on the site is read in context, the difference between the two entities is readily apparent. Union Pacific Corporation is referred to as "Union Pacific Corporation."  All other references, including but not limited to, "the railroad" or "Union Pacific," clearly mean Union Pacific Railroad Company.  Contrary to Plaintiff's misleading assertion, both entities are well defined and easily distinguishable.  And unlike the facts in *Anderson*, nothing in the UPRR's website demonstrates that Union Pacific Corporation's relationship with Union Pacific Railroad

Company, as it relates to its presence in the state of Arkansas, is anything more than that of a parent company and its subsidiary.

**B.   Union Pacific Corporation and Union Pacific Railroad Company do NOT share the same logo.**

Plaintiff also incorrectly argues that Union Pacific Corporation and Union Pacific Railroad use the same logo.  This is simply not true.  Had Plaintiff spent more time reading the website and less time trying to create confusion where none exists, she would have found in "History and Photos," under the "Milestones" section of the website the following information:

> **The 1969 Shield.**  After the formation of Union Pacific Corporation, it was determined that one shield design would be used to identify the corporation and its subsidiaries.  Modifying the 1950 Shield, the word "Railroad" is dropped from the escutcheon.  Slightly refined on February 5, 1970, this logo will serve this capacity until its scope would be restricted to the **railroad only** in 1981.  This is the current shield for the Union Pacific Railroad today.

(*See* "Exhibit D")(Emphasis added).

If that was the end of the story, then perhaps Plaintiff's argument might have an iota of merit.  But that is not the end of the story.  In the same section of the website, it states as follows:

> **Corporate Identifier.**  The new logotype for **Union Pacific Corporation** has a new "plain vanilla" shield accompanied by the words '**Union Pacific Corporation.**

> **1981 Logotype.**  The 1969 Shield is **married to the words** '**Union Pacific Railroad'** typeset in Futura all caps.  Appearing beneath is an optional subsidiary tagline.  This variation of the logo was used from 1981 to July 1983, and then again from January 1986 to the present.

(*Id.*)(Emphasis added).  Union Pacific Corporation and Union Pacific Railroad Company's logos are easily discernible.  Moreover, the separate and distinct logos were

created for that very reason (i.e., to distinguish between the Railroad Company and the Corporation). *Id.*   In this respect, Plaintiff's argument to the contrary is completely erroneous.

### C.   Union Pacific Corporation's Interests in its Subsidiary Operations are not similar to those in *Anderson*.

Plaintiff goes on further to argue that, as in *Anderson*, Union Pacific Corporation has a clear awareness and interest in its subsidiary's substantial operations in Arkansas. Contrary to Plaintiff's argument, *Anderson* is not on point. In *Anderson*, the Court focused on the non-resident company's substantial interest in its subsidiary's activities within the state of Arkansas, as opposed to the other states in the United States.[5]

In an attempt to support of her argument, Plaintiff emphasizes that Union Pacific (i.e., Union Pacific Railroad Company) has 1,344 miles of track, 2,863 employees in Arkansas, has an annual payroll in Arkansas of $159.6 million dollars, and made $103.6 million dollars in purchases in the state of Arkansas.  Although these are impressive statistics, the Court should consider that Union Pacific Railroad Company also conducts business in most of the other states in the United States. In Texas, for example, Union Pacific Railroad Company has 6,388 miles of track.  It has 8,213 employees and an annual payroll of approximately $512.4 million dollars.  It made purchases in the state of Texas in the amount of $1.1 billion dollars. *See* "Exhibit F". Based on the foregoing,

---

[5] The Court also focused on the parent company's activities in the state of Arkansas.  As evidenced above, Union Pacific Corporation is not, and never has been, licensed to do business in the state of Arkansas. Union Pacific Corporation does not do business as Union Pacific Railroad Company in the State of Arkansas. It does not operate, repair, maintain, or inspect railcars in the state of Arkansas.  Union Pacific Corporation has no contacts with the state of Arkansas that might in any way be characterized as continuous or substantial business activities.  Union Pacific Corporation has no agent for service of process in the state of Arkansas. does conduct business in the state of Arkansas.

Union Pacific Corporation's interest in Union Pacific Railroad Company's activities in Arkansas should pale in comparison to its interest in Union Pacific Railroad Company's activities in the state of Texas.  Plaintiff has no evidence showing that Union Pacific Corporation has a clear awareness and interest regarding Union Pacific Railroad Company's activities in any particular state, including the state of Arkansas.

### III.  <u>CONCLUSION</u>

In order for this Court to assert personal jurisdiction over Union Pacific Corporation consistent with due process, the Court must find that Union Pacific Corporation has minimum contacts with the state of Arkansas such that maintenance of this suit does not offend traditional notions of fair play and substantial justice. Likewise, this Court must find that Union Pacific Corporation's contacts with the state of Arkansas are sufficient to cause it to reasonably anticipate being haled into court within that state. In accordance with the foregoing, the facts necessary to make these findings simply do not exist.

**WHEREFORE, PREMISES CONSIDERED**, Defendant Union Pacific Corporation respectfully asks this Honorable Court to grant its 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction; dismiss Defendant Union Pacific Corporation from the above-entitled and numbered cause; to award attorneys' fees and costs incurred for the preparation of its motion and reply; and for any further relief to which it may show itself entitled.

Respectfully submitted,


/s/ Leisa B. Pearlman_
George L. McWilliams
Arkansas Bar No. 68078
Sean F. Rommel
Arkansas Bar No. 94158
Leisa B. Pearlman
Arkansas Bar No. 92070
Jack T. Patterson II
Arkansas Bar No. 95012
**PATTON, ROBERTS,**
**McWILLIAMS &  CAPSHAW, L.L.P.**
2900 St. Michael Drive, Suite 400
Post Office Box 6128
Texarkana, Texas  75505-6128
Telephone:  (903) 334-7000
Facsimile:   (903) 334-7007

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record in the above action who have agreed to service by electronic filing on this 25th day of September, 2006.


      /s/ Leisa B. Pearlman
          Leisa B. Pearlman